WILLIAM A. SWEET, Appellant and Respondent, v. THE CITY OF SYRACUSE et al., Respondents and Appellants.

In construing a provision of the Constitution, its history and the conditions and circumstances attending its adoption must be kept in view, and the effect of subsequent amendments are to be determined by the same rules applicable to the interpretation of statutes.

Every presumption is in favor of the constitutionality of a statute, and to justify the court in pronouncing it an unauthorized expression of the legislative will, it must be made to appear that, when fairly and reasonably construed, it is in clear and substantial conflict with some provision of the Constitution. If the act and the Constitution can reasonably be so construed as to enable both to stand, it is the duty of the court to give them that construction.

That portion of the provision of the State Constitution, limiting the power of municipalities to create debts (Art. 8, § 11), which declares that the term of bonds issued by certain cities to provide for a water supply, "shall not exceed twenty years," and requires that "a sinking fund shall be created on the issuing of the said bonds, for their redemption," applies only to cities with a population exceeding 100,000.

It seems, the only restriction imposed by said provision upon the power of the legislature to authorize cities not containing a population exceeding 100,000 to incur indebtedness is that none shall be incurred, except for city purposes.

Accordingly held, that the provision of the act "to establish and maintain a water department in the city of Syracuse" (§ 18, chap. 291, Laws of 1889, as amended by chap. 314, Laws of 1890), which authorizes the issuing of city bonds, payable July 1, 1920, to defray the expenses of the work, and which makes no provision for a sinking fund, was not violative of said constitutional provision; it appearing that the city contained less than the specified number of inhabitants.

Also held, that said act does not offend against the constitutional provision (Art. 3, § 16), providing that no local or private bill shall embrace more than one subject and requiring that to be expressed in the title; that under the title given, the legislature could properly insert not only every provision necessary for the organization of a water department, but also provisons conferring power upon that body to supply the city with water.

Also held that, the provision of said act (§ 18), authorizing the city to take water from Skaneateles lake, is not repugnant to the constitutional provision (Art. 7, § 6) which prohibits the legislature from selling, leasing or otherwise disposing of the Erie and certain other canals; it appearing that, while the lake had been appropriated by the state "for a reservoir and feeder to the Erie canal," the water accumulated therein

was in excess of that needed for canal purposes; that large quantities were permitted to flow from the lake which were not utilized by the state, much more than is authorized by the act to be taken from the lake for city purposes, and that the act only authorizes the taking of water not required for the use of the canal; that the provision did not sell or authorize the sale, nor did it lease the waters of the lake, but operated merely as a license to the city to take water not needed by the state, subject to the paramount right of the state to resume it at any time.

Also *held*, that, conceding that said provision, as contained in the original act of 1889, was invalid, it did not render the whole act void; and that after the provision was amended in 1890, and thus rendered valid, nothing stood in the way of the full operation of the entire act.

Also *held*, that even if the whole act was rendered invalid by the invalidity of said provision, after the amendment had cured the defect and validated the provision, the act was to be construed as if the amendment had been a part of it originally, and so, as containing no provision obnoxious to the constitutional objection.

*It seems* that the meaning of the last-named constitutional provision is that neither the canals, as highways of commerce, nor other property owned by the state, connected with the canals and actually essential to their operation and maintenance, shall be sold or leased.

The selling or leasing to, and the use by riparian owners or cities, of so much of the waters of streams and lakes appropriated as feeders and reservoirs for the canals as is not needed for the use of the canals, subject to the paramount rights of the state, is not inconsistent with the public use, and an act authorizing it is not in conflict with said provision.

So, also, the legislature may authorize the sale of state property once appropriated and used for the canals, but no longer required for canal purposes.

In an action to restrain said city, its officials and the water board created by said act, from carrying into effect or exercising the powers conferred by it, it was conceded that neither the original act, nor the act amending the same, received the vote of two-thirds of the members elected to each house, and it was claimed that the provision of the act above referred to (§ 18) was violative of the provision of the Constitution (Art. 1, § 9), declaring that the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating public moneys or property for local or private purposes. *Held*, untenable; that the state never acquired the ownership of the mass of water in the lake, but simply the right to the use of so much as is necessary for canal purposes; and that the condition of the grant to the city in the act was such that no property right or interest which the state owned was transferred, lost or impaired.

Also *held*, that conceding the state owned the soil of the bed of the lake, this was subject to every easement and servitude necessary to the use of

the waters by other riparian owners, so far as they may be entitled to use the same; and that a use of the soil under water for the purpose of placing a pipe therein was no invasion of any exclusive property right the state has in such soil.

While the right to the use of water as it flows along in a body may become a property right, the water itself is not the subject of fixed appropriation or exclusive dominion, and property therein cannot be acquired either by sovereign or subject, or become the subject of transmission.

Also *held,* that the word " appropriating," as used in said last named constitutional provision, refers to a transfer of public property as a gift or gratuity, not to a transfer, for an equivalent; and that by the arrangement contemplated by the act, the state received an equivalent for the right granted.

*Sweet* v. *City of Syracuse* (60 Hun, 28), reversed.

(Argued June 11, 1891; decided June 25, 1891. Reargument ordered October 27, 1891. Reargued December 1, 1891; decided December 22, 1891.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made May 5, 1891, which modified, and affirmed as modified, a judgment in favor of defendant entered upon a decision of the court on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George F. Comstock* and *Charles H. Peck* for plaintiffs. Chapter 291 of the Laws of 1889 and chapter 314 of the Laws of 1890 which expressly assume to grant the waters of Skaneateles lake as property of the state are unconstitutional and void. (*City of Philadelphia* v. *Collins,* 68 Penn. St. 123 ; *N. O. W. W. Co.* v. *Rivers,* 115 U. S. 674 ; *St. T. Water Works* v. *N. O. Water Works,* 120 id. 64 ; *Citizens' Water Co.* v. *Bridgeport,* 55 Conn. 1; Cooley on Const. Lim. 343 ; *Kempshall's Case,* 26 Wend. 422; *Arnold* v. *H. R. R. Co.,* 55 N. Y. 661; Lewis on Em. Domain, § 61.) The bed and waters of Skaneateles lake belong to the state by virtue of its original proprietary right. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 155 ; *People* v. *N. Y. & S. I. F. Co.,* 68 N. Y. 78; *Smith* v. *City of Rochester,* 92 id. 482 ; *Bedlow*

v. *N. Y. F. D. D. Co.*, 112 id. 274; *Knickerbocker* v. *Shultz*, 116 id. 387; *Brown* v. *Schofield*, 8 Barb. 239; *People* v. *Canal Appraisers*, 33 N. Y. 464; *Niederhauser* v. *State*, 28 Ind. 258, 267; *Canal Comrs.* v. *People*, 5 Wend. 447; *Canal Appraisers* v. *People*, 17 id. 597; *C., etc., R. R. Co.* v. *Valentine*, 19 Barb. 484; *Fletcher* v. *Phelps*, 28 Vt. 257; *Austin* v. *R. R. R. Co.*, 45 id. 215, 242; *State* v. *Gilmanton*, 9 N. H. 461; *State* v. *F. F. Co.*, 4 id. 240; *Boorman* v. *Sunnuchs*, 42 Wis. 233; *State* v. *Milk*, 11 Biss. [U. S.] 205; *Wood* v. *Kelly*, 30 Me. 55; *Murray* v. *Sermon*, 1 Hawks [N. C.] 56; 3 Kent's Comm. 429; Angel on Watercourses, § 41; *Wheeler* v. *Spinola*, 54 N. Y. 385; *White's Bank* v. *Nichols*, 64 id. 65; *Avery* v. *E. W. Co.*, 82 id. 590; *Child* v. *Starr*, 4 Hill, 369; *Railroad Co.* v. *Schurmeir*, 7 Wall. 287; *Miles* v. *Patch*, 13 Gray, 257; *Bradley* v. *Rice*, 13 Me. 198; *Nickerson* v. *Crawford*, 16 id. 245; *Lincoln* v. *Wilder*, 29 id. 179.) The ownership of the bed of the lake carries with it the ownership of the waters. (*Canal Comrs.* v. *People*, 5 Wend. 423; *Canal Appraisers* v. *People*, 17 id. 572; *Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522; *People* v. *Tibbetts*, 1 id. 523; *People* v. *Canal Appraisers*, 33 id. 461; *Roberts* v. *Baumgarten*, 110 id. 383; *Rundle* v. *D. & R. C. Co.*, 13 How. [U. S.] 80; *S. C. Co.* v. *Wright*, 9 W. & S. 9; *McKeen* v. *D. D. C. Co.*, 40 Penn. St. 424; *State* v. *Jersey City*, 25 N. J. D. 527.) The waters of the Skaneateles lake, and the outlet of the same, are the property of the state by appropriation under the canal laws. (*Jermaine* v. *Waggener*, 1 Hill, 279; 7 id. 357; *Hutchinson* v. *Comrs. of Canal Fund*, 25 Wend. 692; *People* v. *Canal Board*, 2 T. & C. 242; *People* v. *Contracting Board*, 27 N. Y. 381; *Howland* v. *Eldridge*, 43 id. 461; *Guest* v. *City of Brooklyn*, 69 id. 511; *People ex rel.* v. *Leonard*, 74 id. 445; *People ex rel* v. *Common Council*, 78 id. 33; *Osterhoudt* v. *Rigney*, 98 id. 234; Cooley on Const. Lim. 71; Potter's Dwarris on Statutes 125, 175–178; Elphinstone on Inter. of Deeds, 1, 2, 36, 37, 47; 1 Greenl. on Ev. 277, 278; 1 Kent's Comm. 462; *Jackson* v. *Lewis*, 17 Johns. 477; *Waller* v. *Harris*, 20 Wend. 562; *McClursky* v. *Cromwell*, 11 N. Y. 601; *Johnson* v. *H. R. R.*

*R. Co.*, 49 id. 462 ; *Springstern* v. *Samson*, 32 id. 706 ; *Benton* v. *Wickwire*, 54 id. 226 ; *Matter of Middletown*, 82 id. 199 ; *In re O'Neil*, 91 id. 520 ; *Mangam* v. *City of Brooklyn*, 98 id. 591 ; *Humphreys* v. *N. Y., etc., R. Co.*, 121 id. 435 ; 1 R. S. 226, §§ 48, 49 [Banks' 8th ed. 731] ; *Rexford* v. *Knight*, 11 N. Y. 308 ; *Mark* v. *State*, 97 id. 572 ; *Heacock* v. *State*, 105 id: 248 ; *Stewart* v. *State*, Id. 254 ; *Benedict* v. *State*, 120 id. 228 ; *People ex rel.* v. *Tompkins*, 40 Hun, 230 ; *Baker* v. *Johnson*, 2 Hill, 347 ; *Turrell* v. *Norman*, 19 Barb. 263 ; *Birdsall* v. *Cary*, 66 How. Pr. 361 ; *People ex rel.* v. *Hayden*, 6 Hill, 360 ; *Blair* v. *Kiger*, 111 Ind. 193 ; *Farrington* v. *Payne*, 15 Johns. 432 ; *Porter* v. *Cobb*, 22 Hun, 278 ; *Secor* v. *Sturgis*, 16 N. Y. 554 ; Lewis on Em. Domain, § 664 ; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122 ; *Lahr* v. *M. R. Co.*, 104 id. 268 ; *Kane* v. *M. R. Co.*, 34 N. Y. S. R. 876.) The arguments of the defense that the appropriation of 1843 was not entire, necessarily admit that the state is entitled to the entire flow from the lake as a riparian proprietor. (Const. N. Y. art. 1, § 9 ; *People* v. *Allen*, 42 N. Y. 384 ; *People* v. *Suprs.*, 43 id. 10 ; *People ex rel.* v. *Comrs.*, 54 id. 276 ; *W. W. M. Co.* v. *Shanahan*, 33 N. Y. S. R. 361.) Skaneateles lake and outlet form a part of the Erie canal system, and are thus inalienable by the legislature. (*Elwood* v. *City of Rochester*, 43 Hun, 119, 120 ; *Birdsall* v. *Cary*, 66 How. Pr. 365 ; *In re S. I. R. T. Co.*, 103 N. Y. 256 ; *Heacock* v. *State*, 105 id. 249 ; *Robinson* v. *W. P. R. R. Co.*, 72 Penn. St. 319 ; *N. Y. & E. R. R. Co.* v. *Sabin*, 26 id. 351 ; *State* v. *U. C. R. R. Co.*, 18 Ind. 194 ; *Parish* v. *Wheeler*, 22 N. Y. 494 ; *Hoyle* v. *P. & M. R. R. Co.*, 51 Barb. 45 ; *Gue* v. *T. W. C. Co.*, 24 How. [U. S.] 267 ; *Nostrand* v. *Knight*, 123 N. Y. 614 ; *Nye* v. *Hoyle*, 120 id. 195 ; *Simmons* v. *Cloonan*, 81 id. 557 ; *Winchester* v. *Osborn*, 62 Barb. 338 ; *Spear* v. *Crawford*, 14 Wend. 21, 25 ; *Bruce* v. *D. & H. C. Co.*, 19 Barb. 371 ; *Selden* v. *D. & H. C. Co.*, 24 id. 362 ; 29 N. Y. 642 ; *Hatch* v. *C. & I. R. R. Co.*, 18 Ohio St. 93, 125.) Because the main purpose is defeated the acts are totally void. (*People ex rel.* v. *Potter*, 47 N. Y. 379 ; *H. I. Co.* v. *Alger*,

54 id. 175; *People ex rel.* v. *Spicer*, 99 id. 225 ; *Lawton* v. *Steele*, 119 id. 241 ; *Slauson* v. *City of Racine*, 14 Wis. 398; *Jones* v. *Jones*, 104 N. Y. 234; *People* v. *Allen*, 42 id. 404; *People* v. *Draper*, 15 id. 540 ; *Wynehamer* v. *People*, 13 id. 441, 442; *State* v. *Dausman*, 28 Wis. 541; *Reed* v. *O. R. Co.*, 33 Cal. 212 ; *State* v. *Pugh*, 43 Ohio St. 124 ; *O'Brien* v. *Krenz*, 36 Minn. 136 ; *People* v. *Cooper*, 83 Ill. 585 ; *Bradley* v. *Baxter*, 15 Barb. 131 ; *People* v. *Stout*, 23 id. 559; *Moore* v. *Mausert*, 49 N. Y. 335 ; *In re Miller*, 110 id. 216; Cooley on Const. Lim. 180.) The acts are void because the bonding provisions are unconstitutional. (Const. N. Y. art. 8, § 11 ; *People* v. *Bd. of Suprs.*, 67 N. Y. 109 ; *State* v. *Parkinson*, 5 Nev. 15 ; *East St. Louis* v. *Flannigan*, 26 Ill. App. 449 ; *State* v. *McCauley*, 15 Cal. 430 ; *People* v. *Brooks*, 16 id. 1 ; *State* v. *Pacheco*, 27 id. 175 ; *Grant* v. *Davenport*, 36 Ia. 396 ; *People* v. *May*, 9 Col. 404, 411 ; *Sprinfield* v. *Edwards*, 84 Ill. 626 ; *Law* v. *People*, 87 id. 385, 399.) The act of 1889 is unconstitutional and void by reason of its title. (Const. N. Y. art. 3, § 16 ; *People* v. *Hills*, 35 N. Y. 449 ; *People* v. *O'Brien*, 38 id. 193 ; *People* v. *Suprs.*, 43 id. 10 ; *People* v. *Common Council*, 13 Abb. [N. S.] 121 ; *Gaskin* v. *Meek*, 42 id. 186 ; *People* v. *Allen*, Id. 418 ; *Huber* v. *People*, 49 id. 132 ; *In re Town of Flatbush*, 60 id. 398; *City of Watertown* v. *Fairbanks*, 65 id. 588 ; *In re Sacket*, 74 id. 95 ; *In re Paul*, 94 id. 497 ; *Astor* v. *A. R. Co.*, 113 id. 110 ; *Town of Fishkill* v. *F. & B. R. R. Co.*, 22 Barb. 635 ; *People* v. *Comrs.*, 55 id. 70 ; *Smith* v. *Mayor, etc.*, 34 How. Pr. 508; *Webb* v. *Mayor, etc.*, 64 id. 10.)

*C. L. Stone* for defendants. The statutes in question make no appropriation. (*Gibbons* v. *Ogden*, 9 Wheat. 1; *Prigg* v. *Pennsylvania*, 16 Pet. 539 ; *Newell* v. *People*, 7 N. Y. 97; *McCluskey* v. *Cromwell*, 11 id. 601.) They confer no property rights as against the state. (Cooley on Const. Lim. 171.) Rights of the state respecting Skaneateles lake were not acquired under its appropriation as a canal feeder. (1 Black. Comm. 138; 2 Austin on Juris. [3d ed.] 817, 818;

*Wynehamer* v. *People*, 13 N. Y. 433; *Jackson* v. *Hansel*, 17 Johns. 283; *Merrit* v. *Brinkerhoff*, Id. 306; *Smith* v. *City of Rochester*, 92 N. Y. 463.; *Lyon* v. *Fishmongers Co.*, 1 App. Cas. 683.) It has always been the policy of the state to permit and encourage such use of the shores and bed and waters of its navigable streams, without interference with navigation, as might promote the health and prosperity of its people. This enactment belongs to that class of legislation. It is an exercise of prerogative, not a grant of property. (*Crill* v. *City of Rome*, 47 How. Pr. 402; Laws of 1886, chap. 658; Laws of 1867, chap. 399; *Langdon* v. *Mayor, etc.*, 93 N. Y. 130; *Kingsland* v. *Mayor, etc.*, 35 Hun, 458; *Williams* v. *Mayor, etc.*, 105 N. Y. 420.) All rights of property to the soil under the lake are in the riparian owners, subject only to the public easement of passage over the waters thereon. (*Ledyard* v. *Ten Eyck*, 36 Barb. 102; *C. B. Co.* v. *Paige*, 83 N. Y. 178.) The waters of Skaneateles lake and outlet were appropriated for the use of the Erie canal as a feeder by resolutions of the board of canal commissioners and canal board, passed June 29, 1843. By this act of appropriation the state authorities acquired the right to take only so much water as might be required for the uses of the canal. This was the limit of jurisdiction in the officers who made the appropriation. They had no authority to act with respect to any other public purpose. (1 R. S. chap. 9, tit. 9, art. 2, §§ 9, 16, 18, 19; *Rexford* v. *Knight*, 15 Barb. 641; 11 N. Y. 311; *Higgins* v. *Reynolds*, 31 id. 154, 155; *Varick* v. *Smith*, 5 Paige, 137, 147; 9 id. 547; *In re Albany St.*, 11 Wend. 150; *In re John and Cherry Sts.*, 19 id. 676; *Bennett* v. *Boyle*, 40 Barb. 551; *Cooper* v. *Williams*, 5 Ohio, 392; *McArthur* v. *Kelley*, Id. 140; *Buckingham* v. *Smith*, 10 id. 288; *Kane* v. *Mayor, etc.*, 15 Md. 240; *Co. of Ramsey* v. *Slees*, 28 Minn. 326; *C. & O. C. Co.* v. *Mason*, 4 Cranch, 123.)

*George F. Comstock* for plaintiff on reargument. Water is property and may not be appropriated without compensation.

(Laws of 1817, 301; 1 Angell & Ames on Water-courses, 1; 1 Cruise Dig. [Greenl. ed.] 37; 4 Mason, 400; *Smith* v. *City of Rochester*, 92 N. Y. 242.)

*Charles H. Peck* for plaintiff on reargument.    Chapter 291 of the Laws of 1889 and chapter 314 of the Laws of 1890 are void.    (*Lawton* v. *Steele*, 119 N. Y. 241; Laws of 1888, chap. 532; *People ex rel.* v. *Potter*, 47 N. Y. 379; *Hudson Iron Co.* v. *Alger*, 54 id. 175; *People ex rel.* v. *Spicer*, 99 id. 225; *Jones* v. *Jones*, 104 id. 234; *People ex rel.* v. *Allen*, 42 id. 404; *Wynehamer* v. *People*, 13 id. 441, 442; *State* v. *Dausman*, 28 Wis. 541; *Reed* v. *O. R. Co.*, 33 Cal. 212; *State* v. *Pugh*, 41 Ohio St. 124; *O'Brien* v. *Krenz*, 36 Minn. 136; *People* v. *Cooper*, 83 Ill. 585; *Warren* v. *Mayor, etc.*, 2 Gray, 84; *Slauson* v. *City of Racine*, 14 Wis. 398; *People ex rel.* v. *Durston*, 119 N. Y. 578; *Cronin* v. *People*, 82 id. 323; Const. N. Y. art. 1, § 9; Cooley on Const. Lim. 85, 180; Laws of 1868, chap. 776; *People* v. *Bd. Suprs.*, 43 N. Y. 10; *Bradley* v. *Baxter*, 15 Barb. 131; *People* v. *Stout*, 23 id. 559; *Moore* v. *Mausert*, 49 N. Y. 335; *In re Miller*, 110 id. 216.)    The waters of Skaneateles lake are the property of the state by appropriation made under the canal laws.    (*Swinnerton* v. *C. Ins. Co.*, 37 N. Y. 174; *People* v. *Snyder*, 41 id. 397; *People* v. *Breese*, 7 Cow. 429; *Chapman* v. *Wilber*, 6 Hill, 475; *Brown* v. *Schofield*, 8 Barb. 239; *People* v. *Canal Appraisers*, 33 N. Y. 464; *Neiderhauser* v. *State*, 28 Ind. 258, 267; *Hatch* v. *C. & I. R. R. Co.*, 18 Ohio St. 93, 125; *Agawam Bank* v. *Strever*, 18 N. Y. 502; *Slater* v. *Jewett*, 85 id. 68; *Mayor, etc.*, v. *Sands*, 105 id. 217; Cooley on Const. Lim. 71; Potter's Dwarris on Statutes, 125, 175–178; Elphinstone on Inter. of Deeds, 1, 2, 36, 37, 47; 1 Greenl. on Ev. 277, 278; 1 Kent's Comm. 462; *Jackson* v. *Lewis*, 17 Johns. 477; *Waller* v. *Harris*, 20 Wend. 562; *McClursky* v. *Cromwell*, 11 N. Y. 601; *Johnson* v. *H. R. R. R. Co.*, 49 id. 462; *Springstern* v. *Samson*, 32 id. 706; *Benton* v. *Wickwire*, 54 id. 226; *In re Middletown*, 82 id. 199; *In re O'Neil*, 91 id. 520; *Mangan* v. *City of Brooklyn*, 98 id. 591; *Humphreys* v. *N. Y., etc., R. Co.*, 121 id. 435; 1

R. S. 226, §§ 48, 49 [Banks' 8th ed. 731]; *Rexford* v. *Knight,* 11 N. Y. 308; *Mark* v. *State,* 97 id. 572; *Heacock* v. *State,* 105 id. 248; *Stewart* v. *State,* Id. 254; *Benedict* v. *State,* 120 id. 228; *People ex rel.* v. *Tompkins,* 40 Hun, 230; *Baker* v. *Johnson,* 2 Hill, 347; *Turrell* v. *Norman,* 19 Barb. 236; *Birdsall* v. *Cary,* 66 How. Pr. 361; *People ex rel.* v. *Hayden,* 6 Hill, 360; *Blair* v. *Kiger,* 111 Ind. 193; *Farrington* v. *Payne,* 15 Johns. 432; *Porter* v. *Cobb,* 22 Hun, 278; *Secor* v. *Sturgis,* 16 N. Y. 554; Lewis on Em. Dom. § 664; *Smith* v. *People,* 47 N. Y. 337; *Nostrand* v. *Knight,* 123 id. 614; *Eldridge* v. *City of Binghamton,* 120 id. 314; *B. P. Comrs.* v. *Armstrong,* 45 id. 234; *G. V. C. R. R. Co.* v. *Slaight,* 49 Hun, 37; *W. C. & T. Co.* v. *Price,* 81 Penn. St. 175; *Haldeman* v. *P. R. Co.,* 50 id. 425; *David* v. *City of New Bedford,* 133 Mass. 549; *Smith* v. *City of Concord,* 143 id. 253; *Howe* v. *Weymouth,* 148 id. 605; 2 Black. Comm. 18; *Smith* v. *City of Rochester,* 92 N. Y. 475; *Clinton* v. *Myers,* 46 id. 316; *Pixley* v. *Clark,* 35 id. 524; *Mayor, etc.,* v. *Comrs.,* 7 Penn. St. 348; *Tyler* v. *Wilkinson,* 4 Mason, 397; *Liggins* v. *Inge,* 7 Bing. 682; *Kensit* v. *G. E. R. Co.,* L. R. [23 Ch. Div.] 566; 27 id. 122; *People* v. *N. Y. & M. B. R. Co.,* 84 N. Y. 568; 2 Black. Com. 14; 3 Kent's Com. 439, 440; Gould on Waters, §§ 204–209; *Varick* v. *Smith,* 5 Paige, 143; *Morgan* v. *King,* 35 N. Y. 454; *People* v. *F. F. Ins. Co.,* 25 Wend. 219; *De Peyster* v. *Michael,* 6 N. Y. 467; *Gardner* v. *Village of Newburgh,* 2 Johns. Ch. 162, 166; Lewis on Em. Dom. § 60; Gould on Waters, § 245; *Ex parte Jennings,* 6 Cow. 525; *Ferrens* v. *O'Brien,* L. R. [11 Q. B. Div.] 21; *Heyneman* v. *Blake,* 19 Cal. 579; *P. C. Co.* v. *Hoyt,* 57 id. 44; Laws of 1887, chap. 533; *Crooker* v. *Bragg,* 10 Wend. 265; *C., etc., R. R. Co.* v. *Valentine,* 19 Barb. 484; *State* v. *F. F. Co.,* 4 N. H. 240; *Boorman* v. *Sunnuchs,* 42 Wis. 233; *State* v. *Milk,* 11 Bliss. [U. S.] 205; *Wood* v. *Kelly,* 30 Me. 55; *Murray* v. *Sermon,* 1 Hawks [N. C.] 56; 3 Kent's Com. 429; Angel on Watercourses, §§ 41, 90, 96; *Orendorff* v. *Steele,* 2 Barb. 126; *Halsey* v. *McCormick,* 13 N. Y. 296; *Cook* v. *McClure,* 58 id. 441; *White's Bank* v. *Nichols,* 64 id. 65;

*Avery* v. *E. W. Co.*, 82 id. 590; *Child* v. *Starr*, 4 Hill, 369; *Railroad Co.* v. *Schumeir*, 7 Wall. 287; *Miles* v. *Patch*, 13 Gray, 257; *Bradley* v. *Rice*, 13 Me. 198; *Nickerson* v. *Crawford*, 16 id. 245; *Lincoln* v. *Wilder*, 29 id. 179; *Canal Comrs.* v. *People*, 5 Wend. 423; *Canal Appraisers* v. *People*, 17 id. 572; *Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522; *People* v. *Tibbetts*, 1 id. 523; *Roberts* v. *Baumgarten*, 110 id. 383; *W. R. Co.* v. *City of Fall River*, 147 Mass. 557; *S. C. Co.* v. *Wright*, 9 W. & S. 9; *Rundle* v. *D. & R. C. Co.*, 13 How. [U. S.] 80; *McKeen* v. *D. D. C. Co.*, 49 Penn. St. 424; *State* v. *Jersey City*, 25 N. J. L. 527; *Reid* v. *Gifford*, Hopk. 416; *Corning* v. *T. I. & N. Factory*, 34 Barb. 485; 39 id. 311; 40 N. Y. 191.) The grant of these waters to the city is an appropriation of public property for a local purpose, within the meaning of the Constitution. (Const. art. 3, § 19.) The Skaneateles reservoir and feeder form a part of the Erie canal system, and are thus inalienable by the legislature. (Const. art. 7, § 6; *Birdsall* v. *Cary*, 66 How. Pr. 365; *Robinson* v. *W. P. R. R. Co.*, 72 Penn. St. 319; *Willink* v. *M. C. & B. Co.*, 4 N. J. Eq. 377; *S. N. Co.* v. *Comrs.*, etc., 11 Penn. St. 202; *Lehigh C. & W. Co.* v. *Northampton County*, 8 W. & S. 334; *President, etc.*, v. *Frailey*, 13 S. & R. 422; *R. T. Co.* v. *Stoever*, 6 W. & S. 378; *N. Y. & E. R. R. Co.* v. *Sabin*, 26 Penn. St. 351; *State* v. *U. C. R. R. Co.*, 18 Ind. 194; *Parish* v. *Wheeler*, 22 N. Y. 494; *Hoyle* v. *P. & M. R. R. Co.*, 51 Barb. 45; *Nostrand* v. *Knight*, 123 N. Y. 614; *Nye* v. *Hoyle*, 120 id. 195; *Simmons* v. *Cloonan*, 81 id. 557; *Winchester* v. *Osborn*, 62 Barb. 338; *Warwick* v. *Mayor, etc.*, 28 id. 210; *Wetmore* v. *White*, 2 Caine's Cases, 87; *Spear* v. *Crawford*, 14 Wend. 21, 25; *Bruce* v. *D. & H. C. Co.*, 19 Barb. 371; *Selden* v. *D. & H. C. Co.*, 24 id. 362; 29 N. Y. 642; *In re S. I. R. T. Co.*, 103 id. 256.) The law of 1890 is void, because it requires expenditure without substantial returns. (*Weaver* v. *Cherry*, 8 Ohio St. 562; Dillon on Mun. Corp. § 72.)

*Louis Marshall* and *Charles E. Ide* for defendants on reargument. Assuming that the state owns the bed of Skaneateles lake and that the proceedings of the canal authorities, taken in 1843, gave to the state the right to use the waters of the lake for the purposes of the Erie canal, yet the state never acquired any property or ownership in the waters of that lake, and since the act of 1890 merely assumes to authorize the defendants to take such water as is not required for the Erie canal, it does not appropriate any public property, within the meaning of the Constitution. (*People* v. *Morris,* 3 Den. 381; *In re N. Y. E. R. Co.,* 70 N. Y. 327; *G. E. R. Co.* v. *Anderson,* 3 Abb. [N. C.] 431; *People ex rel.* v. *Terry,* 108 N. Y. 1; 2 Bouvier's Inst. § 1610; 3 Kent's Comm. 439; 2 Black. Comm. 14, 18; *Pixley* v. *Clark,* 35 N. Y. 524; *Clinton* v. *Meyers,* 46 id. 516; *Pratt* v. *Lawson,* 2 Allen, 287; *Kidd* v. *Laird,* 15 Cal. 161; *Eddy* v. *Simpson,* 3 id. 219; *Mayor, etc.,* v. *Comrs.,* 7 Penn. St. 348; *Philadelphia* v. *Collins,* 68 id. 123; *Cooper* v. *Williams,* 4 Ohio St. 253; *Tyler* v. *Wilkinson,* 4 Mason, 397; *Liggins* v. *Inge,* 7 Bing. 682; *Mason* v. *Hill,* 5 B. & A. 1; 3 id. 306; *Kensit* v. *G. E. R. Co.,* L. R. [23 Ch. Div.] 566; *Race* v. *Ward,* 4 El. & Bl. 695; *Acton* v. *Blundell,* 12 M. & W. 324; *Chasemore* v. *Richards,* 7 H. L. Cas. 347; *Village of Delhi* v. *Youmans,* 45 N. Y. 362; *Miner* v. *Gilmour,* 12 Moore, 156.) The state is not the owner of the bed of Skaneateles lake. (*Smith* v. *City of Rochester,* 92 N. Y. 463; *Bristo* v. *Cormican,* L. R. [3 H. L. Cas.] 641; *Hardin* v. *Jordan,* 140 U. S. 371; *Mitchell* v. *Smale,* 140 id. 406; *Lincoln* v. *Davis,* 53 Mich. 282; *Clute* v. *Fisher,* 65 id. 48.) The state did not, by virtue of the proceedings of the canal authorities of 1843, acquire the right to use more of the waters of the lake than were actually necessary for the purposes of the Erie canal. (*Varick* v. *Smith,* 5 Paige, 147; *Cooper* v. *Williams,* 5 Ohio, 39; *Buckingham* v. *Smith,* 10 id. 432; *Adams* v. *Slater,* 8 Ill. App. 72.)

*C. L. Stone* and *W. A. Beach* for defendants on reargument.

O'BRIEN, J.   The plaintiff, a taxpayer of the city of Syra-
cuse, brought this action, under the provisions of section 1925
of the Code of Civil Procedure, as supplemented by chapter
531 of the Laws of 1881 and chapter 673 of the Laws of 1887,
against the city, the mayor thereof, the members of the com-
mon council and the water board, to perpetually restrain them
from carrying into effect or exercising any of the powers con-
ferred by chapter 291 of the Laws of 1889, entitled "An act
to establish and maintain a water department in and for the
city of Syracuse," as amended by chapter 314 of the Laws of
1890.   It is alleged that the defendants are without power to
perform the various acts and functions specified in this statute,
for the reason that it is in conflict with certain provisions of
the State Constitution, and also that it was not legally enacted,
not having received the assent of two-thirds of the members
of both houses of the legislature; and that the execution
thereof by the defendants would involve a culpable waste of
the municipal funds and property.   The Special Term held
that the act was valid and dismissed the complaint.   The Gen-
eral Term held that section 18 was invalid, and modified the
judgment accordingly, which has all the effect, substantially,
of a reversal and a decision in favor of the contention of the
plaintiff.   Both parties appeal from the judgment as thus
modified, the plaintiff because the judgment of the trial
court was not wholly reversed, and the defendants because
it was, in any respect, modified.   The act authorized the
mayor to appoint a board of water commissioners to con-
stitute the water board.   This board was authorized for
and in the name of the city to acquire, construct, main-
tain, control and operate a system of water-works to fur-
nish the city and its inhabitants with water from Skaneateles
lake, and to acquire all lands, waters and other property neces-
sary for this purpose.   The power to exercise the right of
eminent domain was conferred and the procedure provided
for.   For the purpose of defraying the expenses of the work
power was given to issue and sell the bonds of the city when-
ever the board considered it necessary, to an amount not

exceeding three million dollars, all payable July 1, 1920, with
interest payable semi-annually, but no sinking fund was pro-
vided for.    The eighteenth section, as amended in 1890, and
which was pronounced invalid, authorized the board, under
the conditions and restrictions thereinafter mentioned, to take
and conduct water, not required for the Erie canal, from
Skaneateles lake to the city through a pipe or main not exceed-
ing thirty inches in diameter, for the purpose of supplying the
city and its inhabitants with water.    But, before taking any
water from this source, the board was required, at the cost and
expense of the city, to increase the storage capacity of the
lake sufficiently to store therein all the ordinary flow of its
watershed; the fact of such reconstruction for increased stor-
age of the water to be certified by the state engineer and the
superintendent of public works, and filed in the office of the
last named official.    The plans and specifications for all this
work were to be prepared or approved by the state engineer,
and all the work executed under the direction, supervision and
control of the state superintendent of public works, under
whose exclusive charge and control the dam and all structures
connected therewith, together with the regulation at all times
of the flow of the water from the lake into the pipe, were to
remain; all necessary repairs to be made under his direction
at the expense of the city.    He was authorized and required,
if for any reason the flow of water into the pipe impaired the
necessary and sufficient supply for the use of the Erie canal,
to stop such flow, in whole or in part, whenever in his judg-
ment it was necessary in order to secure a full supply for the
canal.    The rights of the city in and to the use of the surplus
waters of the lake, conferred by the act, were expressly
declared to be at all times subject to the superior claims of
the state thereto, and power was given to the state engineer to
prescribe the plan of construction of the gate-house or other
means of delivering the water of the lake into the pipe.    It
was further provided that the city should, at all times, protect
and save the state harmless from and against all claims and
demands of riparian owners, upon the lake and outlet, for loss

or damages occasioned by any act or structure authorized by the statute, and that before any water was taken from the lake the city should acquire or extinguish all water power rights upon the outlet to be affected by the proposed storage of water, and, subject to these restrictions, general power was given to the board to perform all acts and acquire all property necessary or proper to enable the city to store and obtain water from the lake. It appears from the findings that Skaneateles lake is a body of water distant about seventeen miles from Syracuse. Its length is about fifteen miles, and its general width about one mile, with a surface area of about thirteen square miles, and a watershed, including the surface, of seventy-three one-fourth square miles. It is about four hundred and fifty-three feet above the Jordan level of the Erie canal, and discharges its water through an outlet, known as Skaneatles creek, about ten miles long, into the Seneca river, thence into the Oswego river and into lake Ontario. The lake has been for many years navigated by steamboats and other craft, but there is no navigable communication between it and any other waters.

The controversy between the parties requires this court to pass upon the validity of an act of the legislature. The principles governing such an inquiry were well stated by RUGER, Ch. J., in *The People ex rel.* v. *Angle* (109 N. Y. 567): "Within settled rules it requires a case to be made showing clearly that the statute, when fairly and reasonably construed, is brought into conflict with some provision of the Constitution before the court can be justified in pronouncing it an unauthorized expression of the legislative will. If the act and the Constitution can be so construed as to enable both to stand, and each can be given a legitimate office to perform, it is the duty of the court to give them such construction; but if this cannot be done, it is equally our duty to declare the supremacy of the constitutional provision and the nullity of the statute. While every presumption is in favor of the constitutionality of the law, if, nevertheless, it appears that its enforcement must necessarily produce a conflict with the letter or spirit of the

Constitution, it is the duty of the court to condemn the law."
The bonds of the city, which this statute authorized the board
to issue, had more than twenty years to run and, as already
observed, no sinking fund was provided for.   The plaintiff con-
tends that, for this reason, the act violates section eleven of
article eight of the Constitution which limits the power of
certain cities to contract debts and issue money obligations.
This section does forbid the creation of any debt by any city
except for city purposes, and this is the only restriction which
the Constitution imposes upon the power of the legislature to
authorize cities, not containing a population of over one hun-
dred thousand inhabitants, to incur indebtedness.   No city can
give any money or property, or loan its money or credit to or
in aid of any individual or corporation, or become the owner
of stock in or bonds of such corporation.   These prohibitions
are general and applicable to all cities alike without regard to
population.   A further restriction upon the power to create
debts, even for city purposes, is also placed upon cities con-
taining over one hundred thousand inhabitants, which the
plaintiff invokes to nullify the statute in question.

As it is conceded that Syracuse contains less than one hun-
dred thousand population, and as it is obvious that the bonds to
be issued for a water supply is for a city purpose, we are clear
that the prohibition does not apply to the statute under
consideration.

The first two paragraphs of the section, as it now stands,
were adopted in 1874, and they apply to all cities, but exclude
from the restrictions, upon the power to create debts, such
obligations as are given for municipal purposes.   The remain-
der of the section was adopted in 1884, and does impose restric-
tions upon the power to create debts and levy taxes even for
city purposes, but these restrictions, as already observed, are
limited to cities of more than one hundred thousand inhabit-
ants, and to counties containing such a city.   In giving con-
struction to a provision of the Constitution, its history and the
conditions and circumstances attending its adoption must be
kept in view, and the effect of subsequent amendments are

determined by the same rules applicable to the interpretation of statutes. (*People ex rel.* v. *Angle, supra.*)

The general policy of the state to restrict the power of cities and villages in respect to the power of taxation, borrowing money and contracting debts indicated in section 9, article 8 of the Constitution, as adopted in 1846, and chapter 603 of the Laws of 1853, has found expression, with the exceptions above referred to, only in acts of the legislature, mostly incorporated into the charters of particular municipalities, and occasionally by some act of a more general character, all of which are, of course, subject to modification or repeal. Neither this policy nor the necessity which may be conceded for restraining, in this respect, the smaller as well as the larger cities, would warrant us in declaring an act of the legislature, authorizing the city of Syracuse to incur a debt of three million dollars for the purpose of a water supply, invalid. Nothing short of a constitutional prohibition would justify such a result, and this we cannnot find in the section referred to, either in express words or by fair and reasonable construction.

The act does not offend against section 16 of article three of the Constitution, which provides that no local or private bill shall embrace more than one subject, and that shall be expressed in the title. The title of the bill in question is "An act to establish and maintain a water department in and for the city of Syracuse." Under this title the legislature could properly insert not only every provision necessary for the organization of such a department as an official body, but also provisions conferring power upon that body to supply the city and the inhabitants with water. It could create the department and, in the same bill, prescribe its powers and duties with such particularity and detail as in its judgment might be deemed necessary, without offending against this clause of the Constitution. It is necessary that the title be such as to fairly suggest or give a clue to the subject; but, when that is expressed, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are

proper to be incorporated in the act and are germane to the title. (*Astor* v. *Arcade R. Co.*, 113 N. Y. 93, 110.)

None of the provisions of the act are of such a character that it can properly be said that the public or the members of the legislature were or could have been deceived by the title in regard to the details. Power to conduct water through pipes from reservoirs to be constructed, and to distribute the same to the city and its inhabitants, could fairly be anticipated among the provisions of an act with such a title. The authority conferred upon the board by the statute is, we think, fairly within the scope of the subject as expressed in the title. (*City of Rochester* v. *Briggs*, 50 N. Y. 553 ; Cooley on Const. Lim. 172; *Wrought Iron Bridge Co.* v. *Town of Attica*, 119 N. Y. 204; *In Matter of Mayor*, etc., 99 id. 569.)

The important provisions of the bill are to be found in section eighteen, as amended in 1890. There it is that the legislature attempted to confer power upon the water board to take water from Skaneateles lake and it is contended in behalf of the plaintiff, that the section is in conflict with section six of article seven of the Constitution which provides that the legislature shall not sell, lease or otherwise dispose of the Erie and certain other canals, "but they shall remain the property of the state, and under its management forever." In the year 1843 the canal board, by the authority of the statutes, appropriated the lake for the use of the canal. The resolution of the board, which accomplished this result, is as follows: "Resolved, that the waters of the Skaneateles lake and the outlet of the same, be, and they are hereby, appropriated to the use of the public for a reservoir and feeder to the Erie canal." To carry this resolution into effect lands were taken at the foot of the lake which included the dam and water rights at that point. This dam, nine feet high, has ever since been maintained by the state and the flow of water into the outlet is regulated by the use of gates in the dam, which, since the appropriation, have been under the control and management of an employe of the state. About nine miles below, at the village of Jordan, another dam has been constructed across the

outlet, by means of which a portion of the water from the lake is discharged into the canal. An aqueduct constructed under the canal permits the flow of that part of the stream not used for canal purposes, beneath the canal, through its natural channel, into the Seneca river, which is but a short distance from this point. Between the lake and the canal numerous mills are situated along the outlet, being supplied with power from the running water, and these are some of the water rights referred to in the statute which the city is bound to purchase or extinguish. During the time, in every year, when the canals are closed, a volume of water has been permitted to flow through the gates of the dam at the foot of the lake for the use of the mills along the outlet, except for several periods in different years when the water was held back in order to increase the storage or for the purpose of repairs. The court below found that the quantity of water thus ordinarily permitted to flow, was about fifty million gallons per day which has never been utilized by the state for canal purposes. The carrying capacity of the thirty-inch pipe, authorized by the act to be laid, is found to be fifteen million gallons per day, and that quantity drawn per day would be equivalent in one month to two inches in depth from the surface of the lake. We think that the permission given by the act to the city of Syracuse to take water from the lake, not required for the use of the Erie canal, is not in conflict with that provision of the Constitution which forbids the sale of the canal and secures its ownership and management to the state forever. Applying a fair and reasonable construction to this limitation the statute is not within either its letter or spirit. The management of the canal must, under this provision, devolve upon the legislature and such officers of the state as are charged with duties in that regard by the Constitution. This power of management implies discretion in many matters of detail. What the framers of the Constitution intended by this provision was that the canal, as a highway of communication, should not be sold or leased, but remain the property of the state, and forever under its management, in order to promote the commer-

cial prosperity of the people. Within the watershed of the canal, from the Hudson river to the lakes, there had been appropriated to the use of navigation the waters of numerous streams, small lakes and ponds as feeders and reservoirs for the canal. The use of these waters by riparian owners and even by cities that have grown up upon the line of the canal, for domestic or manufacturing purposes, subject to the paramount rights of the state, is entirely consistent with the public use to which they had been devoted, and this must have been contemplated when the appropriation was made. A statute, therefore, permitting a city to draw from one of these lakes, for its own use, water which the state does not need for the use of the canal is not inconsistent with the integrity of the canal system as a highway of commerce, nor is it in conflict with the Constitution. In regard to all these objections urged against the validity of the statute we have no difficulty in agreeing with the reasons and conclusions of the General Term. That court, however, found that the statute was invalid under another provision of the Constitution. Article 1, section 9, provides that the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes. The trial court found, and it is conceded that neither the original act of 1889, nor the amendment of 1890, received the vote of two-thirds of the members elected to each house. The General Term has held that, for this reason, the eighteenth section, as amended in 1890, was never legally enacted.

This brings us to the question whether the bill, or any part of it, was, in fact, one appropriating public property for local or private purposes, within the meaning of this provision of the Constitution. There is no doubt that the state, in some sense, has a certain property right in Skaneateles lake and its outlet. Lands appropriated by the canal authorities for the use of the canal, under the statute, are held by the state in fee. (*Heacock* v. *State*, 105 N. Y. 248; *Mark* v. *State*, 97 id. 572; *Rexford* v. *Knight*, 11 id. 308.) But it was not land, as such,

that the state appropriated in this case, but water.  It becomes important, therefore, to determine the nature and quality of the right or interest which the state acquired in the waters of the lake and outlet.  It is a principle, recognized in the jurisprudence of every civilized people from the earliest times, that no absolute property can be acquired in flowing water. Like air, light, or the heat of the sun, it has none of the attributes commonly ascribed to property, and is not the subject of exclusive dominion or control.  As Blackstone observes (2 Bl. Com. 18) : "Water is a movable, wandering thing, and must of necessity continue common by the law of nature; so that I can have only a temporary, transient, usufructuary property therein."  While the right to its use, as it flows along in a body, may become a property right, yet the water itself, the *corpus* of the stream, never becomes or, in the nature of things, can become, the subject of fixed appropriation or exclusive dominion, in the sense that property in the water itself can be acquired, or become the subject of transmission from one to another.  Neither sovereign nor subject can acquire anything more than a mere usufructuary right therein, and in this case the state never acquired, or could acquire, the ownership of the aggregated drops that comprised the mass of flowing water in the lake and outlet, though it could and did acquire the right to its use.  These propositions have been often stated by jurists and in judicial decisions in different forms, but it is believed that they all concur in the same general result.  (*Smith* v. *City of Rochester*, 92 N. Y. 475 ; *Clinton* v. *Myers*, 46 id. 516 ; *Pixley* v. *Clark*, 35 id. 524 ; *Mayor, etc.,* v. *Commissioners of Spring Garden*, 7 Penn. St. 348 ; *Tyler* v. *Wilkinson*, 4 Mason, 397 ; *Liggins* v. *Inge*, 7 Bing. 682 ; *Kensit* v. *Great Eastern Rwy. Co.*, L. R. [23 Ch. Div.] 566 ; L. R. [27 Ch. Div.] 122 ; *People* v. *N. Y. & M. B. Rwy. Co.*, 84 N. Y. 568 ; Puffendorf Laws of Nature and Nations, book 4, ch. 5 ; Vattel, Lib. 1, chap. 20, § 234 ; 2 Bl. Com. p. 14 ; 3 Kent Com. 439, 440 ; Gould on Waters, §§ 204–209.) The only property right, therefore, which the state acquired or ever had in the waters of Skaneateles lake and its outlet is

the right to divert and use the same in such quantities as may be necessary for the use and operation of the canal. (*Silsby Mfg. Co.* v. *State*, 104 N. Y. 562.) Subject to this paramount right, the riparian owners may use the waters of the lake and stream for domestic or manufacturing purposes, and the public as a highway for boats and other craft.

We think that the conditions of the grant to the city of Syracuse are such that no property right or interest which the state has or ever had is transferred, lost or impaired. After all the provisions of the statute are executed the state will possess and enjoy every right, with respect to those waters, that it did before and, if this is so, then no public property is transferred by the act from the state to the city. The same result will follow if it be assumed that the state still retains its original proprietary right to the waters and the bed of the lake. As such proprietor, simply, it would have no greater right to use or divert the water than any other riparian owner. Its paramount right to so use and divert it is not derived from its original ownership, but from the exercise of the right of eminent domain. The rights thus acquired are broader than any that it possessed or could exercise as proprietor. It is not found that it has any other property in the waters of the lake than was acquired by the appropriation made by the canal board; but if it be conceded that the learned counsel for the plaintiff is right in his contention that the state owns the soil of the bed of the lake such ownership is, nevertheless, subject to every easement and servitude necessary to the use of the water by the other riparian owners, so far as they may be entitled to use the same. (*Smith* v. *City of Rochester*, 92 N. Y. 480.)

If the city of Syracuse shall acquire lands upon the shores of the lake, the use of the soil under the water for the purpose of placing a pipe therein, is no invasion of any exclusive property right which the state has in such soil. We are of the opinion that no public property was appropriated by this act to local or private purposes. Aside from the reasons above stated it may be observed that the word " appropriating," as

used in this section of the Constitution, refers to a transfer of
public property as a gift or gratuity, and not to some right in
or privilege connected with property belonging to the state
transferred for an equivalent. By the provision of the statute
the reservoir is to be enlarged and its storage capacity greatly
increased and forever maintained at the expense of the city.
The arrangement contemplated by the statute is one which, in
the judgment of the legislature, would be mutually and
equally advantageous to the city and to the state, and such a
law is not within the reason or purpose of the constitutional
provision referred to. We think that the statute is not in con-
flict with any provision of the fundamental law, and is valid.

The judgment of the General Term should be reversed and
that of the Special Term affirmed, with costs.

All concur, except Ruger, Ch. J., not voting, Andrews,
J., not sitting, and Finch, J., absent.


Opinion on reargument:

Earl, J. Prior to 1889, the attention of the inhabitants of
the city of Syracuse appears to have been strongly directed to
the matter of a water supply for that city, and to that end the
act, chapter 291 of the laws of that year was passed. The act
provided for the appointment of water commissioners to be
known as the Syracuse water board. By section 3 of the act,
the board was authorized for and in the name of the city to
acquire, construct, maintain, control and operate a system
of water-works to furnish the city and its inhabitants with
water from Skaneateles lake. Section 18 of the act was as
follows:

"The Syracuse water board, by and with the consent of the
canal board, is hereby authorized and empowered to appro-
priate so much of the waters of Skaneateles lake as may be
necessary to supply the city of Syracuse and its inhabitants
with water; upon the express condition, however, that the city
of Syracuse shall, when so required by the canal board, furnish
from such source or sources, and in such manner as the canal
board may designate, as much water for the use of the Erie

canal as shall be taken by the city from Skaneateles lake, and the power granted by this act shall be deemed to include authority and power to provide such compensating water supply for the Erie canal, and to do and perform all those acts and things which shall be needful to acquire for said city and its inhabitants the waters of Skaneateles lake."

By the act, chapter 314 of the Laws of 1890, section 18 was amended so as to read as follows :

"The Syracuse water board is hereby authorized, under the restrictions and conditions hereinafter mentioned, to take and conduct water, not required for the Erie canal, from Skaneateles lake, to said city, through a pipe or main not exceeding thirty inches in diameter, for the purpose of supplying said city and its inhabitants with water. Before any water shall be so taken, however, the water board shall, at the cost and expense of said city, increase the storage capacity of said lake sufficiently to store therein all the ordinary flow of its watershed ; the fact of such necessary reconstruction having been made shall be certified by the state engineer and surveyor and superintendent of public works, and filed in the office of the superintendent of public works. All the work authorized by this section, including the placing and maintenance of said pipe, shall be executed under the direction, supervision and control of the superintendent of public works, and in accordance with the plans and specifications therefor, to be prepared or approved by the state engineer or surveyor. The dam and all structures connected therewith, together with the regulation at all times of the flow of water from said lake into the aforesaid pipe, shall be and continue in the exclusive charge and control of the superintendent of public works, and shall be maintained and kept in repair by or under the direction of said superintendent, at the cost and expense of the city of Syracuse. This section shall be construed to vest in the state engineer and surveyor the power to prescribe the plan of construction and location of the gate-house, or other means for delivering the water of said lake into said pipe ; and if, for any reason, the flow of water into said pipe shall prevent the state

from having a sufficient quantity for all the uses of the Erie canal, the said superintendent of public works is authorized and required to stop the flow of water into said pipe, in whole or in part, so far as may be necessary in his judgment to secure such sufficient quantity ; it being understood that the rights of the city of Syracuse hereby conferred in and to such surplus waters, are to be subject always to the superior claims of the state thereto. Before any water shall be taken from Skaneateles lake under the provisions of this act, the city of Syracuse shall acquire or extinguish all water-power rights upon the outlet of said lake to be affected by the proposed storage of water. The city of Syracuse shall at all times protect and save harmless the state of New York from and against all claims and demands of riparian owners upon said lake and outlet for loss or damage occasioned by any. act or structure authorized hereby. The powers granted to the Syracuse water board to acquire property under this act, and to make payment therefor, shall be deemed to include full power and authority to do and perform all acts and things necessary or proper to enable said city to acquire, store and obtain water from Skaneateles lake in accordance with the provisions of this section."

Various constitutional objections to these acts have been presented to the courts with much ability and pertinacity. A very careful re-examination of the whole case, after the reargument which the magnitude of the interests involved and other reasons peculiar to the case induced this court to grant, leaves no doubt in our minds that these objections are without foundation. We will here pass over all of them but two, leaving the others to the dispositions made of them in the opinions of Justices CHURCHILL, KENNEDY and MERWIN, delivered in these cases in the Supreme Court, and of Judge O'BRIEN, in this court, after the first argument.

The two constitutional objections to which we will here give further consideration are the alleged violation of section 6 of article 7 of the Constitution, which provides that the state shall not sell, lease or otherwise dispose of the Erie and other canals, " but they shall remain the property of the state

and under its management forever;" and of section 9 of article one, which provides .that " the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes."

(1) Section 18 of the act of 1849, as amended, does not sell or authorize a sale of the waters of Skaneateles lake to the city, nor does it lease them' to it. It operates merely as a license to the city to take water from the lake and conduct it to the city under the paramount right of the state to resume it at any time. It does not authorize the city to take a drop of water needed by the state for the Erie canal. The water remains, as before, absolutely under the control of the state, and the provisions are ample to secure to the state all the water supply it can need from the lake at all times. If the act is faithfully carried out, as we must assume it will be, the interests of the state are placed in no jeopardy, and the usefulness of the canal can in no way be impaired; and yet it is claimed that this is a disposition of the Erie canal within the meaning of the constitutional provision referred to. We must construe the language used in the Constitution in view of the purpose which it was intended to accomplish, and give it such force and effect as we have reason to believe the framers of the provision intended. The Erie canal was a great achievement of statesmanship, and its completion marks an era in the history of our country. It was intended to develop the interior and western parts of our state, and to open a highway for their products to tide-water ; and the statesmen who projected it looked forward to its still greater usefulness in carrying the products of the great west to the markets of our country and of the world. They embodied their enthusiasm and their hopes in the eloquent preamble to the act, chapter 262 of the Laws of 1817, "Respecting navigable communications between the great western and northern lakes and the Atlantic ocean," as follows:

" *Whereas,* Navigable communications between Lakes Erie and Champlain and the Atlantic ocean, by means of canals connected with the Hudson river, will promote agriculture,

manufactures and commerce, mitigate the calamities of war, enhance the blessings of peace, consolidate the Union, and advance the prosperity and elevate the character of the United States; and *Whereas,* It is the incumbent duty of the people of this state to avail themselves of the means which the Almighty has placed in their hands for the production of such signal, extensive and lasting benefits to the human race."

It was deemed important in order that these beneficient results of the canals should be fully achieved, that they should not fall into the hands of private individuals or corporations, but should belong to and be controlled by the state in the interest of the people; and to obviate any danger that they might be leased or disposed of to private individuals or corporations, it was deemed wise to insert in the Constitution of 1821 a provision that "the legislature shall never sell or dispose of  *  *  *  the said navigable communications or any part or section thereof, but the same shall be and remain the property of the state forever." In the Constitution of 1846, the same provision was embodied in section six of article seven, in language above given. Now, what was plainly meant by the language used in these sections? Manifestly, that the canals, as highways of commerce, connecting the lakes with the Atlantic ocean, should forever remain the property of the state, and under its management; and it meant nothing more and could have meant nothing more. The canal water-ways, for the navigation of boats, were not to be sold, or leased, or otherwise disposed of, under any act of the legislature; nor could the legislature authorize the sale of any other property or thing owned by the state connected with the canals, and actually essential to their operation and maintenance; and it cannot be conceived that more was intended. It immediately became the policy of the state, notwithstanding the constitutional provision of 1821, to sell and lease the surplus waters of the canals, and that policy was inaugurated by the generation of statesmen living when the canals were projected and completed, and when the Constitution of 1821 was framed. The early acts upon that subject, and all the acts in reference

thereto, like these now under consideration, contained careful provisions that sufficient water should at all times remain for the use of the canals. By the Revised Statutes (1 R. S. 230, § 75), it was provided that "whenever, in the opinion of the (canal) board, any water may be spared from any state canal, or works connected therewith, without injury to the navigation or safety of such canal, and the persons entitled to the first privilege of taking such water shall not avail themselves thereof, or there shall be no person so entitled, the board may order a sale of such surplus water for a term of years, in their discretion, to the person who shall bid the highest annual rent therefor;" and at page 233, section 90, it is provided that "whenever a sale of surplus water shall have been directed by the canal board, the acting canal commissioners, within whose line such water shall fall, shall proceed to sell and convey such surplus water in the manner following:" Then follow minute provisions as to the mode of sale and the kind of conveyance to be given to the purchaser. One of those provisions is as follows: "The conveyance shall also contain a reservation of the right wholly to resume the water so conveyed, and the privileges thereby granted, and to control and limit the use of such water and privileges whenever, in the opinion of the canal board, or the legislature, the necessary supply of water for the use of any state canal, or the safety of such canal, or works connected therewith, shall render such resumption, control or limitation necessary; and a provision that where such resumption is made, or control or limitation imposed, no compensation or damages shall be allowed for any improvements or erections made in consequence of such grant or lease." Under those provisions there were many sales and leases of surplus waters of the canals in various parts of the state; and yet it was never held or claimed that such disposition of the surplus waters was a violation of the constitutional provision referred to. On the contrary, it has been repeatedly recognized by the courts as valid and constitutional. (*Ex parte Miller,* 2 Hill, 418; *Dermott* v. *State,* 99 N. Y. 101; *Varick* v. *Smith,* 5 Paige, 137; *S. C.,* Id. 946.)

If the waters of Skaneateles lake, therefore, be regarded as a part of the Erie canal, then there is nothing in the act of 1889 and 1890 but the disposition of surplus water not needed for the canal, and hence these acts are in harmony with the policy of the state pursued ever since the construction of the canal system of the state. If the water of the lake had all, through the outlet thereof, been taken into the canal, the surplus water thus created in the canal could have been sold or leased therefrom by the state. Then why may it not sell or lease it from the lake before it reaches the canal? The state has always permitted the surplus water of the lake to flow through the outlet for the use of mill owners thereon. Could it not have permitted such mill owners to take the water directly from the lake or the state dam at the foot thereof? Heretofore the surplus water of the lake not needed for the canal has been permitted to run to waste through the outlet under the canal on its way to Lake Ontario. Why may not the state, instead of that course for it, permit it to run through the pipe of thirty inches diameter to the city of Syracuse, there to be used or wasted?

By chapter 316 of the Laws of 1839, the canal commissioners were authorized to permit the surplus water flowing over any of the dams on the Oswego river to be used for hydraulic purposes by the owners of the lands over or upon which such waters flowed, under such regulations and restrictions as the canal commissioners might impose, and subject to be resumed at any time they deemed proper without any compensation to such owners by reason of such resumption. It was never questioned that the legislature was competent to pass that act for the disposition of the surplus water flowing over the dam. But suppose the dam had been so constructed that the surplus water instead of flowing over the dam had been permitted to flow through gates in the dam which were under the general control of the canal officials, would not the waters not needed for the purposes of the state have still been surplus waters? And could not the legislature have authorized the sale and disposition of them without violating the constitu-

tional provision referred to? The act, chapter 274 of the Laws of 1842, provided for leasing and selling the surplus water of the Erie canal at Black Rock Harbor; and there are other acts of a similar nature.

Suppose the canal commissioners had made a permanent appropriation of land for a gravel pit for the use of the canals, and the gravel had been exhausted so that they had no further use for the land, could it not be sold? Suppose the route of the canal had been changed and the former channel had become useless, and possibly a nuisance, and the state had no further use for it, could it not be sold, or in some way disposed of by the state? Suppose the state had constructed a feeder, which from misjudgment or some other cause had become useless, would the state be bound to keep it forever? Could not the state allow private citizens, under proper regulations, to use the waters flowing through any of the feeders during the winter season? And could it not, with proper regulations, permit them in the winter to use the prism or the tow-path of any canal for the purpose of travel? It seems to me that the answers to all these questions are very plain, and that it would be quite absurd to claim that in such cases there would be a sale or disposition of any portion of the canals in violation of the Constitution.

Numerous acts of the legislature passed since the completion of the canals show that property and rights owned by the state, and formerly appropriated and used for the canals, have been abandoned or otherwise disposed of. By chapter 286 of the Laws of 1847, the canal commissioners were authorized to drain the Jordan level of the Erie canal, and to abandon so much thereof as was no longer used or needed for the Erie canal, and the act authorized the owners of the land through which the canal formerly passed to enter upon and use the same. By the act, chapter 413 of the Laws of 1847, the canal board was authorized to sell a portion of the abandoned canal at Cohoes to the owners of the adjoining land. By the act, chapter 352 of the Laws of 1849, it was provided that whenever the canal board shall by resolution so provide, any lands taken for the

purposes of the canal may be sold by the commissioners of the land office, the proceeds to be credited to the fund appropriated for the construction of the canal for which such lands were taken. By chapter 214 of the Laws of 1850, the canal board was authorized to abandon so much of the old canal in the village of Geddes as they might deem best for the interest of the state. By chapter 263 of the Laws of the same year, the canal board was authorized to abandon the Fort Miller dam and the use of the side cut at that place connected with the Champlain canal. By the act, chapter 267 of the Laws of 1857, it was provided that whenever the canal board shall, by resolution, determine that any land taken for the purposes of the canals of this state have been abandoned, it shall be lawful for the commissioners of the land office to sell, convey and release the title of the state thereto. By the act, chapter 787 of the Laws of 1872, the city of Binghamton was authorized to use a portion of the Chenango canal for a public street. By the act, chapter 369 of the Laws of 1877, the canal board was authorized to close the feeder of the Erie canal in Rochester, and to convey to the owners of the real estate adjoining the feeder the fee to the land occupied by it.

If the present contention of the appellants is well founded, and property once appropriated and used for the canals must forever remain the property of the state, then these various acts are unconstitutional. But if the legislature could authorize the sale of useless feeders and abandoned portions of the canals and the surplus waters of the canals, then it had the power to authorize the city of Syracuse to take the surplus waters of Skaneateles lake not needed for the use of the canals, without violating the constitutional provision referred to. These various acts show the common understanding of the language used in the constitutional provision prohibiting the sale of the canals, and that it does not apply to the sale of any property or rights of the state appropriated for the canals and at some time used for the canals, which are not necessary for their operation and maintenance as highways of commerce. From the completion of the canals to this day the whole course

of legislation shows that such has been the understanding of the law makers and statesmen of our state.

The argument on the part of the appellants is not much advanced by showing that if there was power to sell the canals, and they should be sold by deed granting them with the " appurtenances," and possibly without that word the rights of the state in Skaneateles lake, together with such property as was mentioned in the various acts of the legislature above referred to, would pass under the grant. What might be, in that case, deemed a portion of the canals, and appurtenant thereto, would not necessarily be deemed a portion of the canals under the constitutional provision prohibiting the selling or leasing or other disposition of them. In construing the grant in such a case, the court would take into consideration the intention of the parties, and from the language used would infer that it was intended to bring within the scope of the grant everything connected and used with the canals. But in construing the constitutional provision framed for a different purpose, the same intention cannot be inferred. That must be construed as it may be supposed the statesmen who framed it understood it, while the grant would be construed so as to give effect to the intention of the parties. Nor does the provisions of the Revised Statutes (1 R. S. 217, § 1), naming and describing the canals, throw any light upon this discussion. It is there provided that " the navigable communications heretofore constructed and now in the progress of construction by the state, shall be known and designated as follows : " The navigable communication connecting the waters of Lake Erie with those of the Hudson river, and all the side cuts, feeders and other works belonging to the state connected therewith, by the name of the Erie canal." That was a description of the canal for administrative purposes, and was intended to define how much of the canal system of the state should be classified with the Erie canal. That provision and the classification there found shed no light whatever on the meaning of the word canal in the constitutional provision referred to.

We are, therefore, clearly of opinion that the acts of 1889

and 1890 cannot be condemned as in violation of section 6 of article 7 of the Constitution. It seems so plain to us that, but for the learning and ability of the eminent counsel who have appeared on behalf of the plaintiffs, we should not have considered the point worthy of very serious consideration. We have thus far proceeded upon the assumption that the state had some property rights in the surplus waters of the lake. Of course, if it did not have, there would be no ground whatever for the present contention on the part of the plaintiffs.

(2) It is claimed with equal zeal, and argued with much learning and ability, that the acts of 1889 and 1890, are in conflict with the other section of the Constitution, above referred to. It is well to determine, in the first place, what is meant by "appropriating" the public moneys or property for local or private purposes. It is not every appropriation for what, in some sense, may be called a local purpose, that comes within this provision. Where the appropriation of money is for state purposes, although its expenditure is confined to a locality, it does not require a two-thirds vote. So, too, appropriations may be made, in a certain sense, for a private purpose, and yet not require such a vote. Money may be appropriated to pay individuals for property purchased for the state or for salaries or wages without requiring a two-thirds vote, and thus the appropriation and supply bills annually passed by the legislature, unless they contain donations of public moneys or property for local or private purposes, have never been understood to require such a vote. The word "appropriating" as used in the constitutional provision manifestly has no reference to the appropriation of public money or property where the state gets an equivalent. While such an appropriation may be private as to an individual, so far as it is for the benefit of the state it is for a public purpose. While money appropriated for the improvement of Skaneateles lake for the benefit of the persons living near it or going there for fishing or navigation might be for a local purpose, yet if the improvement was for the benefit of the Erie canal, a highway of commerce through the state, the

appropriation would not be for a local purpose, but for the general welfare of the people of the state. It would be no more for a local purpose than the money appropriated for the construction of the capitol, of arsenals or of any other work in a locality intended for the benefit of the people of the whole state. Except as prohibited in the section we are now considering, a majority of all the members elected to the legislature can appropriate money for any purpose and enact any laws not otherwise in conflict with any constitutional provision, and while this is so, why was this provision inserted in section 9 limiting the power of the legislature and requiring a two-thirds vote? This large vote was necessary to appropriate the money or property of the state where a locality only was interested, and from which the people of the state generally were to derive no benefit and in which they had no interest. Such bills, of no general importance, which substantially would give away the property of the state to some locality, are required to be passed by a two-thirds vote. So too, money or property cannot, without such a vote, be devoted to private purposes in which the state has no interest. The object and purpose of this provision were clearly intended to forbid the legislature, without a two-thirds vote, to make gratuitous appropriations of the public money or property to localities or individuals, and thus to divest the state of its money or property without any equivalent, and it could have no other purpose. The legislature by a majority vote could authorize a sale of the property of the state for a consideration, or the disposition of it in discharge of an obligation.

Now, what does the section of the two acts under consideration do? Does it, in any proper sense, give away any of the property of the state? The right given to the city of Syracuse to draw water from the lake is, as we have seen, in its very largest extent, a mere license to be exercised under the constant supervision of the state, and subject to its paramount right and control. It can never, at any time, as we have before said, take water which the state needs and it can use only the surplus water which would otherwise run to waste.

It seems to us an unwarrantable use of terms to hold that such a license is an appropriation of the property of the state. But that is not all. This is not a gratuitous appropriation. The city is to increase the storage capacity of the lake, and erect and maintain at its own expense a dam and the structures connected therewith. There are two parties to the bargain, each of which gets some advantage. The state gets a larger reservoir from which to supply the needs of the Erie canal, and has the dam kept in repair free of expense to it. After the so-called grant or license to the city of Syracuse the state has still the same right and control over the water for every purpose needed that it ever had ; and it is impossible to perceive how, under such circumstances, it can be said that the act of 1890 appropriates money or property of the state for a local purpose, within any fair meaning of the terms used in the Constitution. None of the acts above referred to, disposing of surplus waters of the canals, were passed by a two-third vote. In *Rumsey* v. *New York & N. E. R. Co.*, recently decided in the second division, an act of the legislature there under construction, authorized the gratuitous grant of the land of the state for a local purpose, and it was held that it required a two-thirds vote.

But it is further claimed that section 18 of the act of 1889 was unconstitutional, and as it was a necessary part of the entire scheme of that act, that, therefore, the whole act of 1889 was unconstitutional and void, and was not given life and rendered valid by the subsequent amendment of section 18.

Without determining whether section 18, as contained in the act of 1889, was valid or not, we do not think that even if it were invalid the whole act was rendered thereby null and void. A water board was thereby constituted and clothed with some powers which could be exercised, and after section 18 was amended, and thus rendered valid, nothing stood in the way of the full operation of all the provisions of the act. We are not, however, prepared to say that if the whole act was rendered invalid in consequence of the invalidity of section 18 it would follow that the act remained invalid after the

amendment. The unconstitutional provision was eliminated by the amendment passed, as we may assume, for the express purpose of validating the act. As to all action taken under the act subsequently to its amendment, it would have to be construed as if the section as amended had always been a part of it. As it then stood it was an act of the legislature passed with all the forms prescribed by the Constitution and containing no provision obnoxious to constitutional objection.

We do not deem it important now to discuss or determine what the particular rights of the state were in the water or the bed of the lake. Those matters have been discussed in opinions already pronounced in these cases, and we reach our present conclusion without deeming it important to further investigate or determine them.

In conclusion, it should further be said that in dealing with the constitutional objections to section 18, proper heed must be given to the canon of construction often reiterated by eminent judges, that when a statute is challenged as in conflict with the fundamental law, a clear and substantial conflict must be found to exist to justify its condemnation. As said by Mr. Justice Washington in *Ogden* v. *Saunders* (12 Wheat. 270): "It is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt."

The judgment of the General Term should, therefore, be reversed, and that of the Special Term affirmed, with costs in this court.

All concur.

Judgment accordingly