(15 App. Div. 86.)

PEOPLE ex rel. GOEDEL et al. v. PALMER (three cases).

(Supreme Court, Appellate Division, Second Department. March 16, 1897.)

MILITIA—MAINTENANCE—CONSTITUTIONAL LAW.

Const. art. 11, § 3, requiring the legislature, at each session, to "make sufficient appropriations for the maintenance" of the National Guard, was designed merely to insure such maintenance, not to restrict the manner thereof to legislative appropriations; and therefore Military Code, § 179, as amended by Laws 1896, c. 853, providing that the compensation of janitors and armorers of National Guard armories shall be a county charge, is constitutional.

Appeal from special term, Kings county.

Applications by Charles Goedel, janitor of a National Guard armory, and John J. Moog and Charles E. Bryant, armorers of such

armories, for peremptory writs of mandamus commanding George W. Palmer, as comptroller of the city of Brooklyn, to pay the relators the amount of their respective wages as janitor and armorers for the month of January, 1897. From orders denying the applications, relators appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Edward M. Grout, for appellants.
Alfred E. Mudge, for respondent.

WILLARD BARTLETT, J. The special term has held, correctly, as I think, that armorers and the janitors of armories of the National Guard belong to the military service of the state, and are not subject to the civil service regulations. This conclusion was not questioned upon the oral argument, and is not questioned in the brief submitted in behalf of the respondent. The sole ground upon which relief was refused to the relators in the court below was that under the constitution of the state, as revised and amended in 1894, it is no longer within the power of the legislature to make the wages of such armorers and janitors payable as a county charge. I am unable to concur in this view as to the effect of the new constitution. By section 179 of the Military Code, as amended in 1896, it is declared that the compensation of such armorers and janitors "shall be a county charge upon the county in which such armory or arsenal is situated, and shall be levied, collected and paid in the same manner as other county charges are levied, collected and paid." 1 Laws 1896, p. 774, c. 853. This clearly imposes the duty of payment upon the officer by whom county charges are payable, unless there be some provision in the constitution, express or implied, which nullifies the declaration and direction of the statute. Such a provision is asserted to exist in the final clause of section 3 of article 11 of the constitution. The entire section reads as follows:

"The militia shall be organized into such land and naval, and active and reserve forces, as the legislature may deem proper, provided, however, that there shall be maintained at all times a force of not less than ten thousand enlisted men, fully uniformed, armed, equipped, disciplined and ready for active service. And it shall be the duty of the legislature at each session to make sufficient appropriations for the maintenance thereof."

The constitutional requirement that the legislature shall at each session make sufficient appropriations for the maintenance of the National Guard has been construed by the special term as a prohibition against legislative action providing for the expenses of the state militia, even to a limited extent, in any other way than by payments out of the state treasury. This construction makes the clause a limitation upon the power which the legislature clearly possessed and exercised without question prior to the adoption of the constitution of 1894. Before that time, there could be no doubt of the validity of legislation which imposed particular expenses in the maintenance of the National Guard upon particular localities, although the general expenses of supporting the organization were borne by the state at large. In adopting section 3 of article 11

in its present form, did the people intend to deprive the legislature of this power, or was it their intention only to make sure that the militia should always be adequately provided for by means of appropriations at each session which, in addition to the support derived by means of county charges, should suffice to accomplish the desired result? It seems quite clear to my mind that there was no idea of lessening the authority of the legislature, and that the command of the constitution to make sufficient appropriations at each session for the maintenance of the militia should not be interpreted as excluding other additional legislative methods of providing money for the support of the National Guard. This view is borne out by a reference to the militia article in the constitutional convention. While it is true that the intent to be arrived at in such a case as this is the intent of the people who ratified the constitution, it is proper to look into the proceedings of the convention by which the instrument was framed, when the court is seeking to ascertain the purpose which led to the insertion of a particular provision. Cooley, Const. Lim. (6th Ed.) 80. In this state the courts have often consulted the journals and debates of the constitutional convention which formulated a given article or section of the constitution, in order to gain light upon its correct interpretation or application. Coutant v. People, 11 Wend., on page 513; Clark v. People, 26 Wend., on page 602; People v. Purdy, 2 Hill, on page 37; In re Keymer, 148 N. Y., on page 224, 42 N. E. 668; People v. Roberts, 148 N. Y., on page 369, 42 N. E. 1085. So, also, the journal of the constitutional commission of 1873 was referred to by the court of appeals in the case of People v. Board of Sup'rs of Westchester Co., 147 N. Y., on page 20, 41 N. E. 567. An examination of the proceedings of the constitutional convention of 1894 in reference to the last clause of the third section of the article on the militia leaves no doubt as to what was the purpose in the minds of those who proposed that amendment. "We also provide in this article," said Mr. Hedges, "that it shall be the duty of the legislature at each session to make sufficient appropriation for the maintenance thereof. We do that with the idea that there might some time arise a condition when no appropriation might be voted. We thus make it incumbent upon our legislators to provide for the National Guard." To the same effect were the remarks of Mr. Cochran, who called attention to the fact that there was nothing in the constitution of 1846 to prevent the legislature from wiping the National Guard out of existence, and declared that the last clause of section 3 had been inserted in the new constitution for that reason. 6 Record Constitutional Convention of 1894, pp. 2585–2591. No other reason for the change appears to have been suggested. The plain object was to insure the continued support of the militia by legislative action. To this end the legislature was commanded to make "sufficient appropriations for the maintenance thereof" at each session. While this called for annual military appropriations, it did not necessarily require that the entire expense of maintaining the National Guard should thus be provided for, if a portion of the cost of maintenance was otherwise defrayed by means of the oper-

ation of the general law of the state, such as the Military Code, or any other statute, under which money raised by taxation was applied to the support of the military establishment. The annual appropriations directed by section 3 would be "sufficient" if, when taken together with all the other money applicable to the maintenance of the militia, they were adequate to keep up the organized, uniformed, and disciplined force of 10,000 enlisted men required by the first part of the same section. At the time the militia article of the new constitution was under discussion in the convention, the Military Code made the compensation of armorers and janitors of armories a county charge. For years previous, the general appropriation bill had made generous provision for the National Guard, and the amount appropriated in 1894 had been $400,000, with $25,-000 additional for the naval militia. 2 Laws 1894, p. 1655, c. 654. The Military Code also fixed the number of troops to be maintained at not less than 10,000 enlisted men. This requirement was placed in the constitution, and the duty to maintain the force was enjoined upon the legislature; but there is no evidence in the proceedings of the convention that so great an additional change was contemplated as would have been involved in forbidding any moneys to be applied to the support of the militia except such as were directly appropriated every year. The effect of such a change would be to transfer to the state at large expenses in connection with the armories and other military matters, amounting to many thousands of dollars a year, which have heretofore been borne by particular localities; and, if it had been understood or intended that this amendment was so to operate, it is difficult to believe that the fact would have escaped mention in the debates of the convention. Nor was there any evil calling for such a remedy. While the existing statutes requiring counties to provide and repair armories for the military organizations within their boundaries imposed a greater burden than other parts of the state had to sustain, such counties enjoyed corresponding advantages in the presence of troops in their cities and towns, where, rather than in the rural districts, the militia is most likely to be needed in the suppression of mobs and riots. I think this is a case for the application of the doctrine laid down by Denio, C. J., in People v. Draper, 15 N. Y. 532, 543, where he says:

"Plenary power in the legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden."

This may be done, of course, by appealing to an affirmative provision of the constitution; for, as the same learned judge adds:

"Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision."

No prohibition should be implied in restraint of legislative power, however, from affirmative prescriptions in a constitution, unless the implication is perfectly clear. I have endeavored to show in the present case that, in view of the condition of things which existed when the constitution of 1894 was adopted, and the purpose which

its framers sought to accomplish by the third section of the article relative to the militia, the legislature has not been deprived of the power to impose a part of the expense of maintaining the National Guard upon the counties in which armories are situated. If this conclusion is correct, section 179 of the Military Code, as amended in 1896, is constitutional, and requires the payment of the claims of these relators by the respondent.

I advise the reversal of the orders appealed from. All concur.