THE EXEMPT FIREMEN ASSOCIATION OF LONG ISLAND CITY, Respondent, *v.* THE TRUSTEES OF THE EXEMPT FIREMEN'S BENEVOLENT FUND OF LONG ISLAND CITY, Appellant, Impleaded with LUCIEN KNAPP, Defendant.

*Long Island City — chapter 141, Laws of 1896, relating to the tax on foreign insurance companies, is a " special city law " — it was not legally passed.*

Chapter 141 of the Laws of 1896, providing that the percentage or tax to be paid by foreign fire insurance companies on insurance on property in Long Island City "shall be paid to a corporation to be hereafter formed, known as 'the Trustees of the Exempt Firemen's Benevolent Fund of Long Island City,'" comes within the designation of a "special city law," and not having been transmitted for acceptance by that city, under section 2 of article 12 of the Constitution of the State of New York, is void.

APPEAL by the defendant, The Trustees of the Exempt Firemen's Benevolent Fund of Long Island City, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 9th day of June, 1898, overruling the said defendant's demurrer to the complaint

interposed on the ground that it did not state facts sufficient to contitute a cause of action.

*Charles A. Webber*, for the appellant.

*George A. Gregg*, for the respondent.

GOODRICH, P. J. :

The plaintiff brings this action contending that, by chapter 370 of the Laws of 1890, it is entitled to the moneys collected by the former treasurer of Long Island City, under the provisions of chapter 604 of the Laws of 1886, amending chapter 465 of the Laws of 1875, from foreign insurance companies doing business in such city. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, and from the interlocutory judgment entered thereon the defendant corporation appeals.

The appeal must turn upon the question whether chapter 141 of the Laws of 1896, entitled "An act to provide for the application and distribution of receipts from premiums collected, and to be collected, from foreign fire insurance companies doing business in the State under and pursuant to chapter six hundred and four of the laws of eighteen hundred and eighty-six, on insurance on property in Long Island City," was duly passed in accordance with the provisions of article 12, section 2, of the Constitution.

This State, in 1814, prohibited insurance within the State by foreign corporations or persons (Chap. 49, Laws of 1814), and this was embodied in the first five editions of the Revised Statutes, the last of which was published in 1859. Each of these editions, however, contains in the same title a provision (seemingly in conflict with such prohibition) which required all such persons or corporations to pay into the State treasury a certain percentage of their premiums.

In 1849 the Legislature passed an act requiring the payment, to the treasurer of the fire department of the city of New York, for the use and benefit of said fire department, by every person acting in such city on behalf of any individual or association of individuals not incorporated by the laws of this State, to effect fire insurance in such city, of two per centum upon all premiums for insurance in such city. (Chap. 178, Laws of 1849.)

In 1875 another act was passed, providing for the payment of such sums to the treasurer of the fire department of every city or incorporated village of the State "for the use and benefit of such fire department." (Chap. 465, Laws of 1875.)

In 1886 this act of 1875 was further amended so as to extend its provisions to unincorporated villages having a fire department. (Chap. 604, Laws of 1886.)

It will be observed that all of the foregoing legislation provided for the payment of the tax to the treasurer of the fire department of the city or village, or, if there was no such officer, to the treasurer or financial officer of the city or village, for the use and benefit of the fire department.

The record does not contain any statement as to the time of the incorporation of the Exempt Firemen Association of Long Island City, the plaintiff in this action, but it must have been previous to 1890, when an act was passed providing that such corporation "shall be entitled to receive, and there shall be paid to it, all moneys now or hereafter collected from the percentage or tax on the receipts of foreign insurance companies from premiums on insurance on property in Long Island City," as provided by the act of 1886, to be applied by it "To visit and provide for sick and distressed members, to bury deceased members and protect and provide for the widows and orphans of deceased members of said corporation." (Chap. 370, Laws of 1890.)

Under this act the plaintiff collected from the treasurer of Long Island City the moneys which had been collected by him under the acts in question.

Such being the condition of affairs in 1896, the Legislature passed another act (Chap. 141, Laws of 1896) which constitutes the subject of the present appeal. This act provided that the percentage or taxes before mentioned "shall be paid to a corporation to be hereafter formed, known as 'the trustees of the exempt firemen's benevolent fund of Long Island City.' Said corporation is to be composed of the president and two vice-presidents of the associations in said city known as 'the Exempt Firemen's association,' 'the Veteran Fireman's association' and 'the Volunteer Fireman's association,' together with the city treasurer and receiver of taxes of said Long Island City, and the city treasurer shall be the treasurer of said

corporation. All returns and undertakings in respect to the tax created by the provision of chapter six hundred and four of the laws of eighteen hundred and eighty-six, on premiums of insurance on property in said city and required by said act, shall be made to and filed with the treasurer of said corporation."

The plaintiff contends that such act falls within the designation of a " special city law," under article 12, section 2, of the Constitution, and that, the provisions of such section not having been complied with, the act was not validated as a law.

Section 2, article 12 of the Constitution classifies cities into three classes according to population, and provides as follows:

" Laws relating to the property, affairs or government of cities, and the several departments thereof, are divided into general and special city laws; general city laws are those which relate to * * * one or more classes; special city laws are those which relate to a single city, or to less than all the cities of a class. Special city laws shall not be passed except in conformity with the provisions of this section. After any bill for a special city law, relating to a city, has been passed by both branches of the Legislature, the house in which it originated shall immediately transmit a certified copy thereof to the mayor of such city, and within fifteen days thereafter the mayor shall return such bill to the house from which it was sent, or if the session of the Legislature at which such bill was passed has terminated, to the Governor, with the mayor's certificate thereon, stating whether the city has or has not accepted the same. * * * In every special city law which has been accepted by the city or cities to which it relates, the title shall be followed by the words ' accepted by the city,' or ' cities,' as the case may be; in every such law which is passed without such acceptance, by the words ' passed without the acceptance of the city,' or ' cities,' as the case may be."

The title of the act in question in the Session Laws is followed by the words: " Became a law March 27, 1896, with the approval of the Governor. Passed, a majority being present." It does not contain either of the phrases, " accepted by the city," or " passed without the acceptance of the city." We must assume, therefore, that the act was never transmitted to the mayor of Long Island City.

There can be no question that the legislation whose history has been recited related to the property and affairs of Long Island City.

The early acts directed the payment of the tax collected from the company into the State treasury. The later acts directed the payment to the city treasurer, and the still later acts devote the money to the use of a special department of the city. The final acts divert the moneys from the treasury and direct their payment by the city treasurer to corporations organized for benevolent purposes connected with persons who have served in the department. If such legislation does not relate to the property and affairs of a city, it would be difficult to frame an act which would have that effect.

It is, however, only with the act of 1896 that we are concerned, for the act of 1890 was passed previously to the constitutional provision in question. When the Constitution of 1894 went into effect the situation was this : The city was authorized to collect the tax from the foreign insurance companies. It had been directed to pay the money over to the plaintiff. Until such payment was made the money remained the property of the city. Even if this were not so, it was a part of its affairs to secure the proper appropriation of the money according to the terms of the act of 1890, for the benefit of exempt firemen who had been in its service.

A very interesting and exhaustive review of the history of firemen and exempt firemen's associations and the duties of the public to them will be found in the opinion of FINCH, J., in *Trustees of Exempt Firemen's Fund* v. *Roome* (93 N. Y. 313), where the court held that while firemen are not civil or public officers, they must yet be regarded as the agents of the municipal corporation, and that certain exemptions conferred upon firemen by acts of the Legislature " went upon the principle that an active and dangerous service for a term of years was not more than balanced by the exemption for life from lighter and less onerous duties ; that further compensation for excess of public burdens faithfully borne was the just due of the firemen, and so set the example of a benefit continued because of the service after the service had been ended." The opinion declares that out of this condition arose the association of exempt firemen in the city of New York. The court referred to and approved the definition of the association as " a charitable department of the city government," which Mr. Justice INGRAHAM had given to it in *Fire Department of the City of New York* v. *Noble* (3 E. D. Smith, 440).

It is clear from a reading of this opinion that the court considered legislation for the benefit of exempt firemen's associations of cities as matter connected with and relating to the affairs of such cities. This being so, the Constitution required the transmission to the mayor of Long Island City of the act of 1896 ; and as there was no such action there was no compliance with the constitutional provision referred to.

In *Trustees* v. *Exempt Firemen Association* (22 App. Div. 564) the constitutionalty of the act in question was assailed by the present plaintiff, and this court stated that it deemed it unnecessary to discuss the questions thus raised. The decision was based on other grounds, but the court held inferentially that the moneys referred to in the act were to be collected by the city authorities. A motion was made for a reargument, based upon the ground "that the decision of the appeal herein is based upon a misapprehension of fact, to wit, that the tax upon foreign insurance premiums since 1890 has been collected by the city authorities of Long Island City and then paid over to the defendant, which is not so, the fact being that said tax was collected directly from the companies by the defendant and is now so collected by the plaintiff," but the court denied the motion " on the ground that the statutes in question plainly contemplated the collection of the moneys by the city authorities in the first instance." (*Trustees* v. *Exempt Firemen Association*, 23 App. Div. 626.)

It is our opinion that the act of 1896 in question is within the provisions of section 2, article 12 of the Constitution, and should have been transmitted to the mayor of Long Island City ; and as it appears by the Session Laws that there was no such transmission, and neither acceptance nor non-acceptance by the city, we hold that the act was not passed in accordance with the provisions of section 2 of article 12 of the Constitution, and is, consequently, invalid.

It follows that the interlocutory judgment must be affirmed.

All concurred.

Interlocutory judgment affirmed, with costs.