THOMAS McGRATH, Appellant, *v.* EDWARD M. GROUT, as Comptroller of the City of New York, and Others, Respondents.

*Statutes making the offices of the sheriff, county clerk and register of Kings county salaried offices — the Constitution did not require their submission to the city of New York — proceedings of the Constitutional Convention used in determining the construction of the Constitution — presumption in favor of a legislative enactment.*

Chapter 705 of the Laws of 1901, entitled "An act to make the office of sheriff of the county of Kings a salaried office and regulating the management of said office," which provides that on and after January 1, 1902, the sheriff of the county of Kings shall receive a fixed salary to be paid by the city of New York, and that the fees collected by such officer after that date shall be paid to the city of New York for its benefit, and chapters 704 and 706 of the Laws of 1901, which contain similar provisions in regard to the county clerk and the register of the county of Kings and the fees collected by them, are not special city laws within the meaning of section 2 of article 12 of the Constitution of the State of New York which provides that such laws shall not be passed except in conformity with the special procedure prescribed by that section.

If the statutes in question related to the city of New York, within the meaning of section 2 of article 12 of the Constitution, they would violate section 16 of article 3 of the Constitution which provides that "no private or local bill, which may be passed by the Legislature, shall embrace more than one subject and that shall be expressed in the title."

The proceedings of the convention in which the Constitution was framed may properly be examined in considering the purpose of a given article or section thereof.

The Legislature is presumed to have acted within the limit of its authority, and a person who contends that there has been a defective enactment of a statute, which is otherwise unobjectionable, must establish that fact affirmatively.

The meaning of words in a constitutional provision is to be determined in two ways: *First,* by ascertaining what the framer desired to guard against by the provision; and, *second,* by ascertaining the meaning of the words when applied to a statute by writers and courts.

APPEAL by the plaintiff, Thomas McGrath, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 27th day of January, 1902, denying the plaintiff's motion to continue *pendente lite* a temporary injunction restraining the defendant Edward M. Grout, as comptroller of the city of New York, from paying the salaries of certain officers of the county of Kings.

*Luke D. Stapleton* [*Ernest P. Seelman* with him on the brief], for the appellant.

*James McKeen* and *George L. Rives* for the respondent Grout.

WOODWARD, J.:

The plaintiff sues as a taxpayer under the provisions of section 1925 of the Code of Civil Procedure, and the sole question involved in this appeal is the constitutionality of chapters 704, 705 and 706 of the Laws of 1901. These statutes were designed to provide for changing the method of compensation for the county clerk, the sheriff and register of the county of Kings, from fees to fixed salaries; and as these officers all stand upon an equal footing (Const. art. 10, § 1), and the provisions of the statutes are in effect the same, it will be unnecessary to consider each chapter separately. It is not disputed that these several bills were enacted by the Legislature with all of the formalities of general legislation, but it is urged that they were special city laws within the meaning of section 2 of article 12 of the Constitution of this State in force at the time of their passage, and, as they were submitted to the mayor of New York, as provided by the section cited, and returned without his approval, no subsequent action being taken by the Legislature, it is insisted that the bills never became law. If these statutes are, in fact, special city laws, there can be no doubt that there is a fatal defect in their enactment, and this court should not hesitate to declare their nullity. But the rule is well settled that the Legislature is presumed to have acted within the limits of its authority (*Fort* v. *Cummings,* 90 Hun, 481; *People ex rel. Kemmler* v. *Durston,* 119 N. Y. 569;

*Sweet* v. *City of Syracuse,* 129 id. 316), and the burden is upon the plaintiff to show that there has been a defective enactment of a statute which is otherwise unobjectionable. It has been held that actual and material injury must exist to warrant a court in declaring a statute unconstitutional (*People* v. *Canal Board of N. Y.,* 55 N. Y. 390), and it might be suggested that the declaration of the plaintiff on information and belief, that the funds of the city of New York, augmented, as they will be by the fees of these several offices, are to be wasted by the payment of the salaries of these several officers and their assistants, is not a very tangible basis on which to attack the constitutionality of a statute unquestionably designed to promote the economical administration of public business, but this is not very material at this time.

The meaning of words in a constitutional provision is to be reached in two ways: *First,* by ascertaining what the framers desired to guard against by the provision; and, *second,* by ascertaining the meaning of the words when applied to a statute by writers and courts. (*People* v. *Supervisors of Chautauqua,* 43 N. Y. 10, 14; *Sweet* v. *City of Syracuse, supra ; Matter of Goedel* v. *Palmer,* 15 App. Div. 86.) The Constitution (Art. 12, § 2), after providing for the classification of cities, says : " Laws relating to the property, affairs or government of cities, and the several departments thereof, are divided into general and special city laws; general city laws are those which relate to all the cities of one or more classes ; special city laws are those which relate to a single city, or to less than all the cities of a class. Special city laws shall not be passed except in conformity with the provisions of this section." Then follow the directions, which it is conceded were not complied with in the matter now before us.

The statutes under consideration, and which are alleged to be special city laws, are similar in purpose. We will use chapter 705 of the Laws of 1901, entitled " An act to make the office of sheriff of the county of Kings a salaried office and regulating the management of said office," as typical of the series. It provides (§ 1), that on and after the 1st day of January, 1902, " the sheriff of the county of Kings shall receive a salary of fifteen thousand dollars a year, as his compensation, which compensation shall be in lieu of all fees, perquisites, emoluments, commissions, percentages, services and duties performed by said sheriff of what-

soever nature, including the transporting of prisoners," etc., and that (§ 2) the assistants shall have certain fixed salaries, and that the sheriff shall have counsel, whose salary is provided for, and that (§ 3): "The board of estimate of the city of New York shall provide for the foregoing salaries annually and shall estimate for the care and maintenance of vans, horses, and other necessary property, and the feeding of prisoners, which shall be a charge upon the city of New York and the said expenses shall be a city and county expense. No bills for vans, horses, feed, et cetera, and the feeding of prisoners shall be paid by the comptroller of the city of New York, except upon certification of such bills by the sheriff or under sheriff or the jail warden appointed by the sheriff of Kings county," etc. By section 5 it is provided that on and after the 1st day of January, 1902, "all moneys to which the sheriff of the county of Kings or under sheriff, or any deputies or subor-. dinates, may be entitled by virtue of his office, or which he may receive for any and all official services rendered by him or by any of his assistants, clerks, employes or subordinates, shall belong to and be for the benefit of the city of New York, and shall be collected by said sheriff and accounted for and paid over on the first and fifteenth days of every month into the treasury of the said the city of New York." The remainder of the statute is given over to details and is not material to the question here presented.

There can be no doubt that chapter 705 of the Laws of 1901 is a local bill within the meaning of section 16 of article 3 of the Constitution, which provides that "no private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title." (*Ferguson* v. *Ross*, 126 N. Y. 459, 464, and authorities above cited.) If this statute relates to the city of New York in a constitutional sense, then there is more than one subject embraced in the act, and it is void under the provisions of the Constitution, last above cited, but no one has suggested that there was more than one subject embraced in chapter 705 of the Laws of 1901, or that such subject was not expressed in the title, which is "An act to make the office of sheriff of the county of Kings a salaried office and regulating the management of said office." An act of the Legislature must of necessity relate to its subject, and if there was but one subject embraced in chapter 705 of the Laws

of 1901, and that subject was expressed in the title, it follows that the act could not have related to the city of New York within the meaning of section 2 of article 12 of the Constitution.

A constitution is an instrument of government, made and adopted by the People for practical purposes connected with the common business and wants of human life (*People* v. *New York Central Railroad Company*, 24 N. Y. 485), and should be so construed as best to promote the great objects for which it was made, avoiding the two extremes of a liberal or strict construction. (*North River Steamboat Company* v. *Livingston*, 3 Cow. 713, 750.) Looked at from this standpoint, it seems clear to us that the language of section 2 of article 12 is to be understood in the light of the provisions of section 16 of article 3, which has remained unchanged since the adoption of the Constitution of 1846. That is, that a bill " relating to the property, affairs or government of cities, and the several departments thereof," if it related to a single city, could have but one subject, and that would have to be expressed in the title, and such a bill, if it related to the " property, affairs or government" of the city, would be a special city law, which would be subject to the provisions of the section. In other words, if the statute was designed to regulate the affairs of the comptroller's office of the city of New York, this fact would have to appear as the subject of the bill in its title, and, as the act would relate to the subject, it would be a special city law, and, as such, would have to be enacted in the manner specially pointed out in the Constitution. This meets all of the practical requirements, and avoids the impracticable necessity of examining minutely every private or local bill to determine whether it in fact relates, however remotely, to the " property, affairs or government of cities."

The proceedings of the convention in which the Constitution was framed may properly be examined in considering the purpose of a given article or section (*Matter of Goedel* v. *Palmer*, 15 App. Div. 86), and while we shall not attempt to follow the somewhat stormy passage of this provision of the Constitution in all of its stages through the convention which sat at Albany in 1894, it may not be out of place to call attention to the objects which were in view. With the opening of the convention a large number of propositions were introduced looking to home rule for cities, and on the twenty-seventh day of July the committee on cities reported a proposed

constitutional amendment, in which there was a provision for the election of a mayor in all cities, and it was provided (§ 1): "Every city shall have a common council, which shall consist of one or two bodies, to be elected with or without cumulative voting, or proportionate or minority representation, and with such *municipal* legislative powers as may be provided by law." (Proposed Const. Amend. vol. 3, Gen. Order No. 13 p. 1.)   Section 3 of this proposed amendment provided: "Except as permitted by section four, the legislature shall not pass any law relating to cities, except a general city law, as to any of the following subjects: 1, streets and highways;   *   *   *   2, parks and public places; 3, sewers and waterworks; 4, the character and structure of buildings as to safety and security; city apparatus and force for preventing and extinguishing fires; 5, salaries of *city* officers and employes; 6, ward boundaries; 7, vacating, reducing or postponing any tax or assessment; 8, membership and constituent parts of the common council; 9, the powers and duties of the common council or any *city officer, as to the subjects hereinbefore enumerated.*"   Simultaneously with the reporting of this proposed amendment the majority of the committee made a report in writing (Documents, vol. 2, Document No. 33, p. 1), in which the committee say: "Your committee have freely availed themselves of the suggestions as to home rule contained in the propositions submitted by" various gentlemen, and it may be assumed that the evils against which it was intended to provide were fully enumerated.   In this report the committee say: "They make no attempt to change the present charters of cities; but, accepting them just as they are, their first attempt is to give a certain degree of permanency to those charters.   They provide for such permanency as to matters which are deemed to be purely municipal, that is as to 1. Streets and highways," etc., following the enumeration above set forth.   (See pp. 6 and 7, where the plan for developing and maintaining municipal legislative bodies is detailed.)

Mr. Jesse Johnson, chairman of the committee on cities, in presenting the report of the committee to the convention Tuesday, August seventh (2 Revised Records, 110), said: "The problem which is presented is the problem of giving some degree of municipal independence to the magnificent and growing cities that are the diadem of our State, without dismembering the sovereignty of the

State," and at page 124 he says : " We must first put some check on the power of the Legislature. Where shall we put it ? My answer is on matters which are entirely in the cities." Mr. Johnson then called attention to the written opinion of Mr. Seth Low upon the question of the line of demarkation between matters that pertain to the municipality and those which are of the sovereignty of the State, and added : " So that our simple proposition here is that we should give a certain degree of municipal independence as to matters purely of the city, as to that which does not interest the community outside. I will state the distinction a little further. Earlier I have referred to the facts of election as being a State function. * * * The question of election, the question of education, the question of health, the question of police, it seems, certainly, are matters as to which the vital concern is in the State. * * * All of those matters your committee leave undisturbed. * * * But, in order to prevent the injustice of special legislation and the danger which constantly occurs when the entire structure of city government is open to the attack of the Legislature, in order to provide against that, the committee say the Legislature should not pass special laws unless the city asks it or consents to it." Again he said (p. 125) : " The common council, a local legislative board, must grow, and so all that is here attempted, as to the cities, is to so provide that there is power to create a legislative board ; and here comes in the principle of home rule, that when it is once created that power cannot be taken away without the consent of the city, except by general law. So that there is here prohibition, some degree of solidity and the framework on which there may be developed local legislative boards, competent and able and helpful to comprehend and solve the great problems of civic government." That is, it was the design of the committee, and that design found some expression in the section now under consideration, to prevent legislative interference with those matters which might properly come within the jurisdiction of the common council, to the end that a local legislative power might be developed which should be authorized to deal with these matters. It was never intended to interfere with the sovereign power of the State to provide for the economical administration of a county office within the boundaries of one of these great cities, nor to stand in the way of the imposing of a duty upon an officer

of the municipality, though such duty related to the sovereign powers of the State, rather than to the municipality.

The very able analysis of the statutory provisions relating to this question by the learned court at Special Term and which clearly indicates that all of the county expenses, if any should result from the changes made by the statutes under consideration, would be levied and assessed upon the property of Kings county, makes it unnecessary to go over that ground again. It is not to be doubted by those who are familiar with the affairs of Kings county that the fees which will be collected and turned over to the city of New York, under the provisions of these several statutes, will much more than meet the fixed charges which are provided for, so that it is entirely probable that the municipality will be handsomely paid for the discharge of the duties imposed upon it by these laws. But were it certain that the salaries and expenses would more than equal the fees, we are still of the opinion that it would not result in waste to the property or funds of the city of New York, and that the statutes do not relate to the city of New York in any constitutional sense, but to the subject of the laws, which are expressed in the titles to the several bills as enacted by the Legislature.

We have examined *Exempt Firemen Association* v. *Trustees* (34 App. Div. 138) and *Chrystal* v. *Mayor* (63 id. 93), as well as the many authorities cited by the appellant, but we find nothing which is not in accord with the conclusion reached in the present discussion. The statute (Laws of 1896 chap. 141) in the *Exempt Firemen* case was a local bill, and its subject, as expressed in the title, was "An act to provide for the application and distribution of receipts from premiums collected and to be collected, from foreign fire insurance companies doing business in the State under and pursuant to chapter six hundred and four of the laws of eighteen hundred and eighty-six, on insurance on property in Long Island City," and the opinion of GOODRICH, P. J., does not suggest an authority for the contention of the appellant in the case before us.

The order appealed from should be affirmed, with costs.

All concurred.

Order affirmed, with ten dollars costs and disbursements.