In the Matter of BANK OF THE MANHATTAN COMPANY, Appellant. MICHAEL J. MURPHY, as Acting Industrial Commissioner, Respondent.

Third Department, March 8, 1944.

*Root, Clark, Buckner & Ballantine,* attorneys (*George E. Cleary* and *Robert G. Surridge* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor-General; W. Gerard Ryan* and *Francis R. Curran, Assistant Attorneys-General,* of counsel), for respondent.

HILL, P. J. The appellant, a New York State corporation, authorized to do a banking business, paid an unemployment pay-roll tax prior to and for the entire year of 1939. It questions the legality for that year and particularly after August 10th. Its objection rests upon section 4 of article XVI of the New York State Constitution which became effective January 1, 1939:

" Where the state has power to tax corporations incorporated under the laws of the United States there shall be no discrimination in the rates and method of taxation between such corporations and other corporations exercising substantially similar functions and engaged in substantially similar business within the state."

This section forbids discrimination as against Federal or State corporations. Either may complain of inequality. The State has no authority to tax corporations organized under the laws of the United States (national banks) except as Congress consents. (*First National Bank* v. *Anderson,* 269 U. S. 341; *Peoples Natl. Bank & T. Co.* v. *County of Westchester,* 261 N. Y. 342.) When congressional consent is given for the assessment by the State of real property owned by national banks, and the State acts thereon, then only may a tax be levied upon the real property of State banks; like nondiscriminatory action applies to franchise and unemployment pay-roll taxes. The contention by appellant that the word " any " should be read into the Constitution after the word " has " so that the first portion of the section would read " Where the state has *any* power to tax," etc., is not persuasive.

The Congress, by act effective August 10, 1939, gave consent that " The legislature of any state may require any instrumentality of the United States * * * and the individuals in its employ, to make contributions to an unemployment fund under a State unemployment compensation law * * * " [Internal Revenue Code, § 1606, subd. (b); U. S. Code, tit. 26, § 1606, subd. (b)]. The Legislature of the State of New York,

reciting such consent, authorized the levy of such a tax against national banks beginning "January first, nineteen hundred forty" (Laws of 1940, ch. 506, effective April 15, 1940). This chapter became section 502-a of the Labor Law. The Legislature exercised its right to make this statute, enacted in April, retroactive to the first day of January. It did not, as it might, make it retroactive to August 10, 1939. If the argument by the State be correct, the power to levy a pay-roll tax against appellant and other State banks would not be affected had the Legislature, to the present date, failed to exercise the power granted by Congress.

Under the Federal Act (§ 1606, *supra*) the Legislature had power to require national banks to pay the tax, and the right to tax State banks for a similar purpose was dependent, under the State Constitution, upon the exercise of that power as to national banks. The State has power to tax the pay rolls of national banks after August 10, 1939. On April 15, 1940, it chose to exercise the power as to pay rolls after January 1, 1940. Its failure to tax national banks between August 10 and December 31, 1939, when it had power to do so, made it an unconstitutional discrimination to tax State banks for the like period. Until the State had power to tax national banks for this purpose, there could be no discrimination. The statute as to the period before August 10, 1939, is constitutional.

HEFFERNAN, J. (dissenting). This proceeding was instituted pursuant to section 516-a of the Unemployment Insurance Law (Labor Law, § 516-a) by appellant for a refund of unemployment insurance contributions claimed to have been erroneously paid for the calendar year 1939. The Industrial Commissioner denied the application and also denied a supplemental claim for a refund.

Thereupon appellant pursuant to paragraph (a) of subdivision 1 of section 523 of the Unemployment Insurance Law [Labor Law, § 523, subd. 1, par. (a)] requested a hearing. The referee sustained the determination of the Industrial Commissioner and the Unemployment Insurance Appeal Board affirmed the latter's findings of fact and conclusions of law. From that determination appellant has come to this court.

The facts are not in dispute. The sole question before this court is whether section 4 of article XVI of the Constitution of the State of New York, effective January 1, 1939, made illegal the imposition upon and the collection from appellant of unemployment contributions for and with respect to the calendar year 1939.

Appellant is a banking corporation organized and existing under and by virtue of the laws of the State of New York. It was incorporated as a State bank by special act of the Legislature on April 2, 1799. It was duly registered with the Division of Placement and Unemployment Insurance as an employer subject to the provisions of the law. It reported to that department and paid into the New York State Unemployment Insurance Fund for the year 1939 taxes aggregating $102,910.24.

Throughout the calendar year in question appellant carried on a general banking business in this State and exercised similar functions and engaged in substantially similar business as national banks in the State of New York incorporated under the laws of the United States.

Unemployment insurance contributions have been collected from State banks ever since the enactment of the law in 1936. Prior to January 1, 1940, no unemployment insurance contributions had been levied upon or paid by national banks. The State, however, had power to tax national banks prior to the year 1939, during such year and subsequently thereto, with respect to their bank shares, dividends, net income and real estate. (U. S. Rev. Stat., § 5219; U. S. Code, tit. 12, § 548.)

In 1938 the Constitution of the State was amended, effective January 1, 1939. Section 4 of article XVI of that Constitution is involved here and provides: " *Where the state has power to tax corporations incorporated under the laws of the United States there shall be no discrimination in the rates and method of taxation between such corporations and other corporations exercising substantially similar functions and engaged in substantially similar business within the state.*"

This section was entirely new in the 1938 revision of the State Constitution. It gives to corporations of this State, primarily banks, a guarantee of equal State tax treatment with competing Federal corporations in this State — equality as to both rates and methods of taxation.

By section 613 of the Social Security Act Amendments of 1939 (53 U. S. Stat. 1391; U. S. Code, tit. 26, § 1606) effective August 10, 1939, Congress authorized the various States to levy nondiscriminatory unemployment insurance taxes upon instrumentalities of the United States except such as are wholly owned by the United States or exempt from the Federal Unemployment Insurance tax imposed by section 1600 of the Internal Revenue Code (U. S. Code, tit. 26, § 1600). National banks are not within the exemptions set forth in section 613. Accordingly on and after August 10, 1939, Congress empowered

the Legislatures of the several States to subject instrumentalities of the United States, including national banks, to their respective unemployment insurance laws.

In permitting the State to impose unemployment insurance taxes on Federal instrumentalities Congress decreed that the States should comply with two conditions: (1) that no discrimination as to rate of contribution be made against such Federal instrumentality; (2) that the State make provision for the refund of any contributions required under its laws from an instrumentality of the United States in the event that such State is not certified by the Social Security Board with respect to any year.

The consent given by Congress to tax national banks contained in section 1606 of the Internal Revenue Code (U. S. Code, tit. 26, § 1606) was a consent contingent upon action to be taken by the State Legislatures. Subdivision (b) of section 1606 of the Internal Revenue Code begins with the following language: " The legislature of any state may require any instrumentality of the United States * * * to make contributions to an unemployment fund under a State unemployment compensation law * * * ".

The consent given by Congress to tax national banks was not self-executory. Congress dictated that such consent would become effective only after the State Legislature enacted provisions in its laws to conform to the conditions imposed by Congress.

After having been given Federal permission the State of New York on April 15, 1940, passed the necessary legislation taxing Federal instrumentalities, including national banks, by enacting section 502-a of the Labor Law which it expressly made retroactive to January 1, 1940. This section of the Labor Law expressly states that it is enacted pursuant to the authority conferred by section 1606 of the Internal Revenue Code and in compliance therewith. The conditions precedent prescribed by section 1606 of such Code for the imposition of a State Unemployment Insurance Law on Federal instrumentalities were complied with in the statute.

During 1939 the State had power to tax national banks by the method specified in section 5219 of the United States Revised Statutes. For that year it imposed on both State and national banks without discrimination a franchise tax measured by income and both were subject to ordinary real estate taxes. In addition the State imposed on State banks the unemployment insurance tax which it did not impose on national banks. It is

conceded that prior to August 10, 1939, it had no power to employ this method of taxation of national banks and for the period August 10 to December 31, 1939, it did not exercise the permission granted by Congress to tax national banks by the same method.

The principal contention of appellant is that the imposition of the unemployment insurance tax and its collection for the calendar year 1939 is contrary to the terms and provisions of section 4 of article XVI of the State Constitution. Appellant urges that since the intent and purpose of this section of the Constitution was to place State and national banks on an equal footing, insofar as taxes are concerned, it was discrimination to collect unemployment insurance contributions from it during the year in question for the reason that the State did not collect unemployment insurance contributions from national banks for the same period.

It is obvious from a reading of the Constitutional amendment that it was not intended to operate retrospectively on methods of taxation already in existence. The Constitutional amendment provides: " There shall be no discrimination ", indicating that its effect was intended to be prospective as to new methods of taxation. Section 4 of article XVI is prefaced by the clause: " Where the State has power to tax corporations incorporated under the laws of the United States   *  .  *   * ".

Respondent contends that the State had no power to tax national banks for unemployment insurance contributions for the year 1939.

In *M'Culloch* v. *State of Maryland* (4 Wheat. 316) Mr. Chief Justice MARSHALL laid down the rule that the public activities of the United States and of the States are mutually free from taxation by the cosovereignty. The Federal government created national banking associations in order to operate and promote its fiscal policies pursuant to the act of June 3, 1864, chapter 106, known as the National Bank Act (13 U. S. Stat. 99; see U. S. Code, tit. 12, ch. 2). They are instrumentalities of the United States Government.

In *First National Bank* v. *Anderson*, 269 U. S. 341 (1926) the United States Supreme Court stated (p. 347): " National banks are not merely private moneyed institutions but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under State authority except as Congress consents and then only in conformity with the restrictions attached to its consent." And in *Des Moines Bank* v. *Fairweather* (263 U. S.

103, at p. 106): '' It is settled that the relation of the national banks to the United States and the purposes intended to be subserved by their creation are such that there can be no taxation, by or under State authority, of the banks, their property or the shares of their capital stock otherwise than in conformity with the terms and restrictions embodied in the assent given by Congress to such taxation.'' This principle was followed by New York Court of Appeals in *Peoples Natl. Bank* v. *County of Westchester*, 261 N. Y. 342, in which the following language appears: '' The right of the several States to tax shares of national bank stock is derived exclusively from the consent of Congress. Except for such approval, no authority would exist, and the exercise of this power must conform with the conditions of the Federal permission.''

As we have shown it was not until August 10, 1939, that New York State was given congressional permission to levy unemployment insurance taxes against national banks. Section 4 of article XVI of the Constitution was a mandate to the Legislature of the State not to discriminate as between State and Federal banks *where the State had power to tax national banks.* It declared the public policy of the State as to future taxation. If there was discrimination flowing from the fact that in the year 1939 appellant was taxed, and a national bank engaged in the same kind of business in New York was not, such discrimination was the result of Federal legislation and the judicial interpretation of the United States courts that a State could not tax a national bank without the consent of Congress and then only according to the conditions prescribed by Congress. Nothing that the Legislature of the State or the administrators of the Unemployment Insurance Law did resulted in discrimination against appellant.

Appellant urges that the words '' power to tax '' as used in the Constitution must be construed as meaning '' any power to tax ''. It then urges that, since the State had power to tax national banks during 1939 with respect to their bank shares, dividends, net income and real estate, it was limited to such forms of taxation with respect to State banks during that year.

The field of unemployment insurance was not in 1939 a field '' where the state has power to tax corporations incorporated under the laws of the United States.'' The phrase '' power to tax '' is clear and unambiguous. These words in their ordinary, everyday meaning, connote the power to levy the specified tax in question. It seems to us therefore that the assessment and collection of unemployment insurance contributions from State

banks in 1939 after the adoption of the Constitutional amendment was not a violation of its provisions.

Appellant has printed as part of its brief excerpts from the minutes of the 1938 Constitutional Convention. In construing the Constitution of the State recourse may be had to the debates and to the proceedings of the convention which drafted the instrument. (*People ex rel. Sweet* v. *Lyman,* 157 N. Y. 368; *Reed* v. *McCord,* 160 N. Y. 330; *Matter of Goedel* v. *Palmer,* 15 App. Div. 86; *Western New York Water Co.* v. *Brandt,* 259 App. Div. 11.)

The minutes of the convention which we have examined indicate no intention on the part of the framers of the Constitution to invalidate the assessment and collection of unemployment insurance contributions from State banks. It would seem to us that if the fact that State banks were subject to the Unemployment Insurance Law, whereas national banks were not, was regarded as an objectionable form of discrimination it would surely have been mentioned among the reasons for enacting the constitutional amendment. Under the familiar principle therefore that constitutional or statutory interpretation looks to the evil which is sought to be remedied, it is clear that the collection of unemployment insurance contributions from State banks was not part of the evil which was sought to be remedied.

Finally appellant urges that the collection of unemployment insurance taxes from it for the period from August 10, 1939, to December 31, 1939, was contrary to the terms of section 4 of article XVI of the State Constitution.

The Legislature of the State was not in session on August 10, 1939, when Congress gave its consent to unemployment insurance taxation by the State. The next session of the Legislature convened on January 3, 1940, and during that session, as already noted, section 502-a of the Labor Law was enacted. The consent of Congress could only become effective through action of the Legislature. The Legislature is the sole judge of how and when it shall exercise its powers. (*Barrencotto* v. *Cocker Saw Co.,* 266 N. Y. 139, 143.) It cannot be said that the failure of the Legislature to make section 502-a of the Labor Law retroactive to August 10, 1939, was such an abuse of discretion as to constitute a violation of the intendment of section 4 of article XVI of the State Constitution.

The decision of the Unemployment Insurance Appeal Board should be affirmed, with costs.

BLISS and SCHENCK, JJ., concur with HILL, P. J.; HEFFERNAN, J., dissents in opinion.

Decision reversed and matter remitted to the Appeal Board to fix the tax of the employer appellant omitting the period from August 10 to December 31, 1939, both inclusive, with costs, and the court determines petitioner appellant is entitled to a refund of the overpayment. [See *post,* p. 1017.]